JAMES CRADDOCK, Administrator, Appellee, v. G. E. BICKEL-HAUPT, doing business as G. E. BICKELHAUPT MOTOR Co., Appellant.

No. 44888.

OCTOBER 24, 1939.

John T. McCarthy, Kenline, Roedell & Hoffmann, and W. E. Purcell, for appellant.

Miller & Claussen, for appellee.

STIGER, J.—I.  On May 24, 1935, there was a collision between the car in which plaintiff's intestate was riding and an Oldsmobile automobile driven by Ben Unruh, who, on May 4, 1935, had purchased the car from defendant, G. E. Bickelhaupt, under a conditional sales contract.  Plaintiff seeks to recover against defendant as owner of the car which he alleges Unruh was driving with his consent.  At the close of plaintiff's testimony, defendant filed a motion for a directed verdict.  One of the grounds of the motion was that plaintiff had failed to prove that the defendant was the owner of the Oldsmobile at the time of the accident; that the evidence affirmatively showed that defendant Bickelhaupt was not the owner of the automobile at the time of the accident and disclosed that Unruh was the owner of the car at said time.  This motion, which was renewed at the close of all the evidence, was overruled, and defendant's first assignment of error is based on the overruling of the motion.

The following Code sections are material to this issue:

"4863. Definitions. In all laws of this state regulating motor vehicles, except where otherwise expressly provided:

\* \* \*

"8. 'Owner' shall include any person having .the lawful ownership, use or control, or the right to the use or control, of a motor vehicle, under a lease or otherwise, for a period of ten or more successive days."

"5026. Liability for damages. In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage."

"9947. [§18] Property in specific goods passes when parties so intend.

. "1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

Plaintiff's evidence establishes the following facts: On May 4, 1935, Unruh paid $20 to defendant on the .purchase price of the Oldsmobile and executed a promissory note to the defendant for $70 for the balance of the purchase price payable at the office of Sherlock Finance Corporation, Savanna, Illinois. The note was immediately endorsed by defendant to the finance corporation without recourse.

We quote some of the provisions of the conditional sales contract executed by Unruh and defendant:

"Sold to the undersigned Purchaser by the undersigned Dealer, the following described property including standard equipment: one Used 1927 Olds 2 door upon which the purchaser owes and agrees to pay a balance of Seventy Dollars ........................Dollars ($70.00) at the office of· the Sherlock Finance Corporation, in Savanna, Illinois, in accordance with a certain negotiable note of even date.

"1. The purchaser represents and agrees that he has in-

spected, accepted and received said property and that no warranty other than title to said property has been made to him, by the seller.

"3. Title to said property shall remain in the dealer until the entire purchase price is fully paid in cash and until this contract is fully performed. Any equipment, tires or accessories now or hereafter placed upon said vehicle shall be covered by this contract.

"8. As an inducement for the Sherlock Finance Corporation to purchase the seller's interest under this conditional sales contract, all parties to this contract, and all assignors and guarantors and indorsers, hereby agree to perform this contract at the office of the Sherlock Finance Corporation, Savanna, Illinois, and each waive the right to a change of venue from any court in Carroll County, Illinois.

"9. The Purchaser acknowledges receipt from the Dealer of a true and complete copy of this contract, and takes notice that the Dealer for value received hereby sells and transfers this contract and said note and all the right, title and interest of the Dealer in and to said property to the Sherlock Finance Corporation of Savanna, Illinois."

The contract also provides for repossession and sale by defendant on default by the purchaser.

Unruh testified that he talked with defendant about buying a car and then "made a deal" with him for the Oldsmobile. He refers to himself as "purchaser." Unruh stated in the contract that "he has inspected, accepted and received said property."

█. Unruh promised to pay for the automobile, he took possession and control of it immediately on the execution of the contract and it is clear that the delivery of possession to Unruh was with the mutual intention of passing the immediate ownership of the automobile to him subject only to reservation of title in defendant as security for the balance of the purchase money. The relationship between the parties was that of seller and buyer. This transaction was undoubtedly a conditional sale.

In the recent case of Hansen v. Kuhn, 226 Iowa 794, 797, 285 N. W. 249, 252, our principal cases defining conditional sale contracts are cited. In this case we held that under a conditional sale

contract in substantially the same terms as the contract in the instant case the buyer was the substantial owner, and the vendor, who retained the legal title only as security for payment of the residue of the purchase price, was not an "owner" within the purview of sections 5026 and 4863, subd. 8.

Justice Bliss, speaking for the court, states:

"Kuhn bought the truck. The only matter held in abeyance was the completed payment. He became the beneficial owner, the equitable owner, the substantial owner, immediately upon the execution of the contract. Only the naked title remained in the seller, subject to being completely divested, upon the receipt of the final deferred installment of the purchase price. Other than the matter of payment, such a sale transaction is in nowise different from an absolute sale."

The decision in this case is controlled by the decision in the Kuhn case.

Plaintiff, appellee, in argument states:

"No single sentence in the contract gives to Unruh any present or certain right in the car. There is no provision in the contract which gives or recognizes a right in Unruh to do more than to acquire title to and ownership of the car upon the completion of the contract payments. Under the terms of the contract, as between appellant and Unruh, both 'title' and 'ownership' remained in appellant."

Instruction No. 17, after calling the jury's attention to the fact that the contract recited the car was sold to the purchaser and contained the provision that title remained in defendant until the entire purchase price was paid, stated:

"Contracts of this character are known to the law as conditional sales contracts and such contracts do not pass title to the property to the purchaser at the time of their execution, but on the contrary, in the absence of other circumstances, reserve the *ownership* and title to the property in the seller. So it is the law in the case before you that the contract between defendant and Unruh left the defendant with *ownership* of the car, unless you find other facts and circumstances which establish an intention on their part that title to and ownership of the car should pass to Unruh." (Italics supplied.)

We are not in accord with the argument or the instruction. Unruh, the purchaser, became the substantial, beneficial owner under the contract.

II. Code sections 4961–4964, inclusive, relating to transfer of ownership of a motor vehicle, read:

"4961. Notice. Upon the transfer of ownership of any registered motor vehicle, the owner shall immediately give notice to the county treasurer, upon the form on the reverse side of the certificate of registration, stating the date of such transfer, the name and post-office address, with street number if in a city, of the person to whom transferred, the license number, and such other information as the department may require.

"4962. Duty of purchaser. The purchaser of the motor vehicle shall join in the notice of transfer to the county treasurer and shall at the same time make application for the transfer of the motor vehicle and for a new certificate of registration.

"4963. Registration and fee. Upon filing the application for transfer, the applicant shall pay a fee of fifty cents for the transfer, thereupon the county treasurer, if satisfied of the genuineness and regularity of such transfer, shall register said motor vehicle in the name of the transferee and issue a new certificate of registration as provided in this chapter.

"4964. When title passes. Until said transferee has received said certificate of registration and has written his name upon the face thereof for the purpose of this chapter, delivery and title to said motor vehicle shall be deemed not to have been made and passed."

Appellee states in argument that "the statute (4964) takes out of the case before the court the only thing on which appellant may rest his case, the delivery of possession. Under the statute delivery is deemed not to have been made. The statute, as well as the contract, provides that title to the car did not pass. Indispensable elements of ownership, possession and title, are destroyed by the statute," and contends that the intent of the legislature in enacting said statute was "to fasten responsibility for the car and damage done by it on the registered owner," and because, when the accident occurred on May 24, 1935 Unruh and Bickelhaupt had not completed the transfer of the Oldsmobile in compliance with the above Code sections,

title to and possession of the car were, under Code section 4964, in Bickelhaupt who was then the registered owner, and, therefore, he must respond in damages as "owner" to plaintiff.

It is the *purchaser* who, upon transfer of *ownership,* must make application for the transfer and a new certificate of registration.

Appellee's construction of the scope and purpose of Code section 4964 is not in harmony with the decisions of this court. In the case of Cerex Co. v. Peterson, 203 Iowa 355, 357, 212 N. W. 890, the question before the court was the effect between buyer and seller of section 4964 which declared that, "for the purpose of this chapter" (chapter 251) delivery and title shall not be deemed to have been made and passed until the transfer has been completed. The court, after reviewing the legislative history of Code section 4964, states:

"Nothing is said about regulating the sale or transfer of title to personal property. That subject was provided for by chapter 396 of the laws of the same legislature, the Uniform Sales Act. The two chapters passed at the same session of the legislature had different purposes in view, and obviously should be construed each as determining the law in its own field. The act now under consideration was a motor-vehicle-licensing and regulating act, and its provisions are limited to the requirements of that purpose. * * *

"Thus the effect and reach of the limitation on delivery and passing of title were expressly limited to the purpose of that act, the purpose of licensing and regulating motor vehicles. The restriction on the passing of title not only had no reference to the rights of buyer and seller, as between themselves, but such rights were expressly excluded by the amendment. * * * It is only for the purpose of Chapter 251 of the Code of 1924, regulating motor vehicles and prescribing the law of the road, that delivery and title are declared not to pass until the registration provisions are complied with. * * * Peculiar provisions were, therefore, necessary, to enable the officials to perform their duty and the state to collect the tax and to prevent fraud, not on the seller or his creditors, but on the state. * * * As has been noted, the rights of the parties as between themselves were left to be determined by the Uniform Sales Act and the law generally governing sales and liens. The Motor Vehicles Act does

not purport to deny to the seller and purchaser, as between themselves, the full rights under the contract which they would have had in the absence of that act."

The construction placed upon Code section 4964 by Cerex Co. v. Peterson, supra, has been followed in Shepard v. Findley, 204 Iowa 107, 214 N. W. 676; Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 221 N. W. 514; Abraham v. Hartford Fire Insurance Co., 215 Iowa 1, 244 N. W. 675.

Plaintiff cites Tigue Sales Co. v. Reliance Motor Company and Abraham v. Hartford Fire Insurance Company, supra, in support of his contention that the question of ownership should have been submitted to the jury. The state of the evidence in these cases was essentially different than in this case.

In Tigue Sales Co. v. Reliance Motor Co., supra, there was a conflict in the evidence as to the ownership of the automobile. The court held that an instruction referring to Code section 4964 and instructing that, in the light of the statute, the fact of nonregistration could be viewed as one of the incidents or circumstances to be considered by the jury in determining the ownership of the automobile, was not error because, there being a conflict in the evidence as to ownership, the incident of nonregistration could be considered by the jury. The court then states [207 Iowa 567, 572, 221 N. W. 516]:

"Chapter 275, Acts of the Thirty-eighth General Assembly, says nothing about regulating the sale or transfer of title to personal property, nor did it purport to invade the provisions of the Uniform Sales Act, enacted by the same legislature (Chapter 396, Acts of the Thirty-eighth General Assembly). Chapter 159, Acts of the Thirty-ninth General Assembly, to avoid a possible misconstruction of the prior act, added the words, 'for the purpose of this chapter,' which purpose was the licensing and regulating of motor vehicles. As pointed out in Cerex Co. v. Peterson, 203 Iowa 355, the restriction on the passing of title not only had no reference to the rights of buyer and seller as between themselves, but such rights were expressly excluded by the amendment. This limitation was carried into the present law. Section 4964, Code of 1924."

In the case of Abraham v. Hartford Fire Insurance Company, supra [215 Iowa 1, 4, 244 N. W. 676], there was also a

sharp conflict in the evidence on the fact of ownership. Defendant, appellant, who contended the court erred in permitting plaintiff to contradict her written transfer of the certificate of registration, complained of an instruction which was to the effect that "the transfer of the certificate of registration was *merely* prima facie evidence of ownership in the daughter, and that such prima facie evidence could be met by other evidence showing that appellee was the unconditional and sole owner of the automobile, and that it was for the jury to determine from the facts and circumstances whether the appellee had proven by a preponderance of the evidence that she was such unconditional and sole owner." (Italics ours.) The court held that appellant could not complain of the instruction in the light of our holding in the cases of Davenport v. Pierce, 194 Iowa 1152, 190 N. W. 942, and Cerex Co. v. Peterson, 203 Iowa 355, 212 N. W. 890.

In the instant case, any inference of ownership arising from the fact that the car was registered in the name of defendant at the time of the accident was met and overcome by other evidence introduced by plaintiff which established that prior to the accident defendant sold and delivered the Oldsmobile to the purchaser, Unruh, with the intention of passing the immediate, substantial ownership to the purchaser subject only to the reservation of title in defendant as security for the purchase money.

Plaintiff claims and the court instructed that the failure of the parties to complete the transfer could be considered in ascertaining the intention of the parties as to whether title and ownership passed from the defendant to Unruh. The parties, by their contract and conduct at the time of the transaction, manifested a clear intention to immediately transfer the property in the car to Unruh. Furthermore Unruh, after stating he had purchased the car for $70, testified:

"I talked to Earl Smith about a week after I got the car; I asked him when we was going to get the car transferred and he told me we had a lot of time; that is all he said. I told him we ought to get it transferred pretty soon and he said there was plenty of time; that is all he said."

This evidence tends to show that both parties thought

Unruh was the owner of the car and entitled to a new registration certificate. Any inference arising from their subsequent failure to complete the transfer is not sufficient evidence of an intention not to pass the ownership to Unruh to take the case to the jury.

██ We hold that at the time of the accident defendant was not the owner of the Oldsmobile within the meaning of Code sections 5026 and 4863, subd. 8.

III. Subsection 2 of Code section 9947 reads:

"2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

Unruh, testifying for plaintiff, stated that two days after the accident "I told Mr. Bickelhaupt and Mr. Smith [an employe of defendant] their car was out there in the ditch and I didn't think I wanted it any longer because I can't make the payments," and that defendant made no reply to this statement.

Appellee claims that the silence of defendant was an admission by conduct that he was the owner of the automobile and was sufficient to take the case to the jury on the question of ownership.

The passing of ownership must be determined by the intention of the parties at the time of the transaction. The terms of the contract and all the parties did and said manifested an intention to transfer ownership to the purchaser, reserving the naked, legal title in defendant as security. Under all the circumstances, Unruh's statement cannot be construed as a claim to defendant that he was the owner of the car. A more reasonable construction of the testimony is that defendant understood therefrom that Unruh was surrendering the car in recognition of the right of the holder of the title as security to repossess the car on default of the purchaser. We do not agree with plaintiff on this contention.

We cannot concur in appellee's contention that there was conduct of the parties after the accident constituting sufficient evidence that they intended ownership of the automobile to pass

to the purchaser sometime subsequent to the transaction to take the case to the jury.

Having concluded appellant was not the owner of the car at the time of the accident, it is unnecessary for us to consider appellant's remaining assignments including his contention that, assuming defendant was the owner of the car prior to the accident, he had assigned all of his right, title and interest to the finance corporation without recourse.

The trial court erred in overruling defendant's motion for a directed verdict.—Reversed.

OLIVER, C. J., and MILLER, SAGER, HALE, and BLISS, JJ., concur.