STATE OF IOWA ex rel. FRANCIS J. KUBLE, County Attorney, Appellant, v. CAPITOL BENEFIT ASSOCIATION, Appellee.

No. 46777.

MARCH 5, 1946.

John M. Rankin, Attorney General, Edward S. White, Jr., Special Assistant Attorney General, and Francis J. Kuble, County Attorney, for appellant.

Connolly, O'Malley & McNutt, of Des Moines, for appellee.

MANTZ, J.—The defendant, Capitol Benefit Association, was duly incorporated in Des Moines, Polk County, Iowa, on or about March 9, 1937, and its articles of incorporation were duly filed in the office of the county recorder of that county about the same date. It was organized and operated under the provisions of chapter 394, Code of 1935, as a nonprofit corporation with the express purpose of paying funeral benefits to its members. It has since continued to operate under said articles.

On August 1, 1944, this action in quo warranto was brought by the State of Iowa upon the relation of Francis J. Kuble, County Attorney of Polk County, Iowa, and the action questions the right of the defendant to operate under the terms of said chapter 394, Code of 1935, and alleges that, even if properly organized under said chapter, it is illegally engaged in the sale of life insurance within the State of Iowa.

Defendant expressly denied that it was engaged in selling life insurance or that it was engaged in any business of that nature; alleged that it was a fraternal organization organized

for benevolent and charitable purposes, and paid out on behalf of its deceased members funeral benefits only.

The pleadings of appellant consist of the petition, with amendment, to which are attached copies of the articles of incorporation, the bylaws, and certificate of membership issued by the appellee.

Said petition in substance alleged that appellee had no right to be organized under chapter 394, Code of 1935, and that it was engaged in the life-insurance business in Iowa in violation of law; also asked for its dissolution and a receivership.

Appellee's answer denied the allegations of appellant's petition raising the question of its legality; denied that it was engaged in life-insurance business; alleged that it was properly incorporated as a nonprofit corporation; that it was a fraternal organization and confined its payments to funeral benefits for and on behalf of its deceased members.

Appellant did not file reply to appellee's answer.

Upon the issues so joined the case was tried. The trial court dismissed the petition of appellant and this appeal followed.

■ I. The first point to be considered arises by reason of the failure of appellant to reply to certain allegations of the appellee's answer. Appellee claims that certain allegations of its answer set up an affirmative defense and that the failure of appellant to reply thereto leaves such allegations admitted. They rely upon Rule 102, Iowa Rules of Civil Procedure, which reads:

"Every fact pleaded and not denied in a subsequent pleading, as permitted by these Rules, shall be deemed admitted, except allegations of value or amount of damage. Allegations of a reply shall be deemed denied by operation of law."

We do not believe that the Rule just quoted has application here.

Summed up, the petition claims that appellee is illegally organized and is engaged in the business of writing life insurance in violation of law. On the other hand, the appellee denies such charges, claims to be a fraternal order, and pays

funeral benefits only on behalf of its deceased members. In effect, the answer of appellee directly contradicts the allegations of the petition. We are unable to see wherein any new issues were raised by the answer. We do not think the answer pleads any facts which do not stand denied by the allegations of the petition. The fact that the articles of incorporation, the bylaws, and the benefit certificate were attached to the petition would not change the situation. These instruments were not in dispute.

The trial court in its findings refers to certain allegations of appellee's answer wherein it sets out its purpose and objects, its source of revenue, the classes and activities of its members, the benefits paid, the lack of contract therefor, the uncertainty of the amount to be paid, and further that it (the corporation) has done no acts which would work a forfeiture of its corporate charter. Following the setting out of such allegations in the findings of fact, the court stated: ''All allegations of defendant's answer are undenied, plaintiff having filed no reply thereto.'' However, a study of the findings of fact and conclusions of law of the trial court reveals that the failure of appellant to reply to appellee's answer was not determinative of the issues raised.

In view of the allegations of the petition and the nature of the issues raised therein and controverted by the answer thereto, we hold that a reply under the Rules was not required.

II. It stands undisputed that appellee was organized under the provisions of chapter 394, Code of 1935, which chapter authorizes and regulates the organization and conduct of corporations not for pecuniary profit. Under said chapter appellee adopted articles of incorporation and bylaws and the same were made a matter of record as provided by law.

Under Code section 8582, of said chapter, it is provided that any three or more persons of full age, a majority of whom shall be citizens of the state, may incorporate themselves for the establishment of churches, schools, libraries, fraternal lodges or societies, by the signing, acknowledging, and filing for record with the county recorder of the county where the principal place of business is to be located, articles of incorporation, stating its name, business or object, officers, trustees, etc.

The record shows the matters required to be set forth: the signing, acknowledgment, and filing of said articles with the county recorder of Polk County, Iowa.

At the time of its organization appellee adopted bylaws as authorized by its articles of incorporation. Article III of its articles of incorporation is as follows:

"Object and Purpose: The object and purpose of this association shall be of a benevolent and charitable nature and for the fraternal, companionship and social fellowship among and between its members; to receive voluntary contributions from and extend relief and benefits to its members, more especially burial benefits, as by the by-laws provided. To establish, regulate, provide, print and furnish rituals, forms, ceremonies, cards, certificates, and supplies; to provide for the distribution of pass-words and regulate the same and prescribe necessary symbols and signs of identification; to have and to hold social gatherings and meetings at any time and place."

Article II of its bylaws is as follows:

"Section 1. The purpose and object and business of this Association shall be of a benevolent nature, for the promotion of fraternal ideals among its members; to receive and disburse voluntary contributions from its members; to establish, regulate and control and furnish certificates and supplies; to provide necessary signs of identifications, to extend relief to its members, solely in the form of funeral benefits as authorized by law; to organize and regulate local branches of this Association, which local branches shall have the same purpose and objects herein described; to have and hold social meetings; to improve the intellectual and moral welfare of its members through study courses, fraternal ceremonies and through any other means which will operate so to improve the intellect and moral welfare of its members."

Under the articles of incorporation, it will be seen that its expressed object and purpose was of a benevolent and charitable nature, and for the fraternal companionship and social fellowship among and between its members, and that relief and benefits to its members were burial benefits. The bylaws

(Article II) set forth in terms similar to the articles of incorporation the purpose of the organization, and we find that, in addition to the fraternal incidents therein set forth, it states, "* * * to extend relief to its members, solely in the form of funeral benefits as authorized by law."

The bylaws provide for two classes of membership: (1) life members and (2) contributing members.

Class one includes as life members persons between the ages of one year and sixty years, of good health, good moral character, and properly recommended, who accept a covenant wherein certain promises are made as to duties, obligations, etc., including payment of a membership fee. When life members are accepted they are privileged to participate in the benevolent and charitable activities, participating in socials, entertainments, fraternal ceremonies, and all other activities conducive to the intellectual and moral welfare of the members. The life membership is six dollars and is to be paid but once. Life members, as such, do not participate in the funeral benefits paid.

Class two consists of contributing members, or those who have complied with the authorized request of the officers of the association for voluntary contributions. These contributions are in the sum of one dollar each and cannot exceed twelve dollars for any calendar year. A portion of the sums paid by contributing members is set aside for general expenses and the balance is put into a benefit fund and used to pay, up to certain maximum amounts, on the funeral expenses of any deceased contributing member. The amounts to be paid on such funeral benefits varied with the attained age of the contributing member at the time of death, as follows: One to fifteen years, $500; fifteen to forty years, $1,000; forty to fifty years, $800; fifty to fifty-eight years, $600; fifty-eight to sixty-five years, $400; sixty-five years and over, $250.

The bylaws provide that the benefits above set forth are the maximum and depend upon the state of the benefit fund at the time of the death. No specific or definite amount is provided.

Each contributing member is given a benefit certificate

wherein there is designated some person to whom the funeral benefits are to be paid upon the death of the holder. The holder of the certificate makes this designation and it can be changed at his pleasure. There is not contained in such benefit certificate any specific guarantee of any amount to be paid. It recites that whatever is on hand available for payment shall constitute all that is to be paid thereon.

In this appeal appellant sets forth three divisions—II, III, and IV—and supports them with argument. These are in addition to Division I, relating to the Rules of Civil Procedure heretofore disposed of. The divisions mentioned are as follows:

"Division II. The defendant corporation could not have been and was not properly incorporated under the provision of Chapter 394 of the 1935 Code of Iowa."

"Division III. The defendant is unlawfully engaged in the business of selling insurance."

"Division IV. The defendant is not a fraternal order which only provides for sick and funeral benefits."

Before considering these propositions, we might suggest that the appellant does not claim in argument that appellee was or is guilty of any fraud in carrying on the business complained of. Appellant must sustain the burden of proof in this contest.

Appellant claims that the appellee, in founding the organization, should have done so under the provisions of chapter 402 of the Code. Chapter 402 of the Code relates to the organizing and carrying on of fraternal beneficiary societies, orders, or associations.

With this claim we are unable to agree. The articles of incorporation and the bylaws of appellee provide that the organization is for benevolent and charitable purposes, fraternal in operation, and the payments made are funeral benefits only. Section 8777 of said chapter 402 is as follows:

"A fraternal beneficiary association is hereby declared to be a corporation, society, or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, and having a lodge sys-

tem, with ritualistic form of work and representative form of government.''

We are unable to see wherein the provisions of said chapter 402 apply. We say this by reason of section 8780 of said chapter, which is as follows:

''The provisions of this chapter shall not be construed to include fraternal orders which only provide for sick and funeral benefits.''

Considering the object and purposes of the appellee in confining its payments to funeral benefits only, in the light of section 8780 above quoted, it is quite evident that said chapter has no application, so far as the incorporation thereunder by appellee is concerned.

We think that the three divisions or propositions advanced by appellant and above set forth are so related and connected that they may be considered together.

In Division II appellant argues that appellee corporation could not have been and was not properly incorporated under the provisions of chapter 394, Code of 1935. We fail to see merit in such claim. The corporation was not organized for profit; it has no stock; one class of its members may voluntarily contribute to a funeral benefit fund and when death to the member ensues there is paid to some designated person from said fund, so far as the same is available, a certain amount, depending upon the age of the member at his decease.

No claim is made that the articles of incorporation and bylaws were not in proper form or were not properly executed and recorded as provided by law.

Division III alleges that appellee is unlawfully engaged in selling life insurance and Division IV alleges that appellee is not operating as a fraternal order which pays funeral benefits only. Appellant argues that the record establishes both contentions. Necessarily appellant has the burden of so showing.

Appellant cites a number of cases which construe the term ''insurance'' and deal with its operations. The term is well known and has frequently been defined. Bliss on Life Insurance, section 3, defines life insurance to be an agreement to

pay a given sum on the happening of a particular event, contingent upon the duration of human life, in consideration of the immediate payment of a smaller sum, or certain equivalent periodical payments. 37 C. J. 359, section 1 [44 C. J. S. 485, section 25], defines life insurance as:

"A contract of life insurance is a mutual agreement by which one party agrees to pay a given sum upon the happening of a particular event contingent upon the duration of human life, in consideration of the payment of a smaller sum immediately, or in periodical payments by the other party."

See, also, Prader v. National Masonic Acc. Assn., 95 Iowa 149, 63 N. W. 601; State ex rel. Auditor v. Iowa Mutual Aid Assn., 59 Iowa 125, 12 N. W. 782; Homesteaders Life Assn. v. Murphy, 224 Iowa 173, 275 N. W. 146; State v. Taylor, 56 N. J. Law 49, 27 A. 797; Pirics v. First Russian Slavonic Greek Catholic Benevolent Soc., 83 N. J. Eq. 29, 89 A. 1036. In State v. Taylor, supra, 56 N. J. Law 49, 54, 27 A. 797, 798, the State of New Jersey made the claim that the Commonwealth Benevolent Association was writing life insurance in violation of statute. That court denied the claim on the facts and said that the contract between the association and the member was as set forth in the bylaws of the association and his certificate of membership; that its purposes were two-fold: first, to provide weekly benefits in the event of disability or sickness, and second, to provide a burial benefit in case of death. That court denied the claim of the state that the payment of sick benefits and burial expenses constitutes "the carrying on of the business of insurance."

In support of its claim that the business of appellee was selling life insurance appellant cites the case of In re Beidelman's Estate, 4 N. J. Misc. 549, 550, 133 A. 873, 874, and makes the statement it is the only case appellant has found that is exactly in point. In that case decedent was a member of Wayne Council No. 159, Junior Order United American Mechanics, Newark, New Jersey. Under its laws there became payable at decedent's death $1,000. At the death of the member that amount was paid to the estate. The widow made claim to it as beneficiary of the decedent. The constitution of

the order designated the sum to be paid as "funeral benefits," and, dealing with the person to whom payment was to be made in the event of death, stated:

"If there be no widow it is paid to the children of the deceased; if no child or children, then the sum is to be paid to the parent or parents; if no parent or parents, then to the brothers and sisters; 'if there are no relatives as above named the funeral benefits revert to the council.' "

The New Jersey court held that the sum paid belonged to the widow and that the term "funeral benefits" meant to be paid to the beneficiary. Other matters were involved. We fail to see wherein the cited case has application here.

Appellant argues at some length regarding the payments which the appellee proposed to make as funeral benefits and places some stress upon the fact that the maximum amounts which might be paid for that purpose varied with the age of deceased. It is argued that inasmuch as such payments of funeral benefits have no reasonable relation to funeral costs it amounts to an attempt to set up a sort of mortality rate. In making this statement, appellant evidently assumes that the maximum payments will be made in all cases. No evidence has been offered which would in any way raise any such inference. The record is silent on that matter. It is also argued that no provision whatever is made to ascertain the cost of the decedent's funeral, or that the sum paid the payee is used for that purpose.

Appellee company is authorized to pay funeral benefits only. It insists that that is all that is paid to its members. Of course, if the company actually pays to the beneficiary a sum that exceeds the actual funeral expenses of the deceased member, then the benefits paid are not funeral benefits only. The difficulty with appellant's contention herein is that the record does not show that the amount actually paid in any instance exceeded the funeral expenses of the member and was not actually applied thereon. In the absence of specific evidence on the question we cannot hold that the company is violating the law or its articles.

We have heretofore called attention to the two classes of

members as set up in the bylaws of appellee, i. e., life members and contributing members. The latter only contribute to and receive benefits from the benefit fund. The contributing members, in order to remain therein, contribute to such fund. Such contributing members must first be life members and as such are entitled to participate in the fraternal and social activities of the order. When a member ceases to contribute to the benefit fund he loses his status as a contributing member and reverts to that of a life member. Contributing members are required to contribute to the benefit fund payments of one dollar, with not to exceed twelve such payments per year.

Appellant claims that such payments are simply assessments to sustain a contract of insurance, and further, to call such voluntary contributions is simply a subterfuge.

Fraternal organizations in carrying on their activities necessarily have expenses. Certainly they would have a legal right to create funds to be used in connection with their activities. We think the statutes under which they are organized clearly so authorize. Section 8780 clearly contemplates that fraternal orders have the right to pay sick and funeral benefits. The statute is silent as to the means or method whereby such funds are accumulated. Section 8583, in dealing with the powers of a corporation not for pecuniary profit, contemplates that the organization may take and accumulate property. Such corporation certainly would have a right to purchase property to be used in connection with its business. It is a well-known fact that in organizations such as fraternal societies the principal source of revenue is from the contributions of their members. When such order feels called upon to pay sick or funeral benefits for or on behalf of its members it would necessarily resort to the fund created by such contributions.

It will be noted that in both the articles of incorporation and bylaws of appellee it is stated that the object and purpose of the association is to be of a benevolent and charitable nature. In 10 C. J. S. 252, section 1, we find the following headnote:

"A beneficial association is an organization, whether voluntary or incorporated, which has been formed primarily for the protection or relief of its members or their dependents and not for profit."

See, also, In re Supreme Lodge of the Masons Annuity, D. C., Ga., 286 F. 180–185; 5 Words & Phrases, Perm. Ed., 348 et seq.

In Division IV appellant argues that it regards the question raised therein as the main question in the case and in so doing denies that appellee is a fraternal order which pays out only funeral benefits. Appellant then argues that the record establishes such claim. We have gone over the record, pleadings, and evidence, and find ourselves unable to agree with this contention. We hold that the record fails to establish such claim. Appellant calls attention to the articles of incorporation and the bylaws. Nowhere does appellant argue that they were the result of fraud or that fraud was being practiced in their operation. Both state that the corporation is for benevolent and charitable purposes and is fraternal in operation. Neither is it argued that any benefits are paid except for funeral purposes. Further, the record shows that the articles and bylaws designate appellee as a fraternal society, with rituals, insignia, forms, and ceremonies, passwords, symbols, and signs of identification, together with social activities. Appellant has made no showing to the contrary.

The evidence upon which appellant relies is rather brief. We will set forth a short summary thereof. Appellant called as a witness D. S. Reed, president of appellee company. His examination was very brief. Reed testified as to his position in appellee company and that he conducted its general business so far as the collection of assessments and payment of benefits were concerned. He stated that his association had never applied for or received from the Insurance Department of Iowa any type of certificate entitling it to engage in any sort of life-insurance business. No questions were propounded to him touching the nature of the business being carried on, its extent, its fraternal activities, or anything connected therewith. Counsel for appellant, in both printed and oral argument, states: ''Whether or not the State should have pursued Mr. Reed further when he was the State's witness is, of course, an interesting speculation.'' Said counsel further philosophized that it appeared somewhat dangerous to press him further

while he was a witness for the State and while the State would have been bound by his testimony. Counsel further suggests that Mr. Reed and his company had every opportunity to enlighten the court as to the business of their organization but decided not to do so. In view of the fact that appellant had the burden of proof this last suggestion may be regarded as somewhat novel.

Oliver S. Nicholson, an insurance examiner for the State, testified that on one occasion he had some discussion with D. S. Reed, president of appellee company. Witness asked Reed what kind of life insurance he had at a cheap reasonable rate. Reed informed witness that he was not selling life insurance but that it was a burial association, fraternal organization, or something to that effect. Witness testified that Reed explained the method of doing business as to application, benefit certificate, and source of funds from which to pay benefits. Witness testified that the only time insurance was mentioned was when Mr. Reed said, "I am not selling insurance." Witness further testified, "I came away from there with the idea that the company paid funeral benefits."

Lloyd R. Smith, a witness for appellant, testified that he was a field investigator for the State Treasurer of Iowa and had been so employed for about six years; that some four or five years ago he had talked with D. S. Reed, president of appellee company, about selling memberships in appellee company; that the membership fee was mentioned and Reed suggested that witness could make a lot of money.

Appellee called as a witness one Daniel O'Donnell, who testified that he knew Mr. Reed; that he had held a membership certificate in the association for seven or eight years. He stated that he worked for Reed securing memberships and also, that in none of his conversations with Reed did the latter refer to policies of insurance; he called them memberships in the association.

The trial court in its findings of fact and conclusions of law found that there was no evidence to show that the officers of appellee association had ever been guilty of any fraud in the management of the association or that any attempt had ever been made to lead any applicant to believe he was buy-

ing life insurance. The record supports such finding and conclusions. We quote from the record:

"All evidence introduced tends to establish that those in charge of the organization have honestly and efficiently conducted its affairs. There is an entire absence of any evidence tending to establish that any members of the order are dissatisfied with the manner in which their organization has been conducted. It appears to the court that the members of the Association knew exactly what type of benefit they applied for and that they obtained what they expected to receive. * * *

"The court Finds that it is such fraternal order and that its business is confined to providing its members with funeral benefits when such members comply with certain requirements set out in the Articles of Incorporation and By-Laws. * * *

"It is the conclusion of the court therefore, that defendant Association was properly organized under Chapter 394; that it is a fraternal order which provides its members with funeral benefits only; hence the membership certificate is not a life insurance policy and the business carried on by defendant Association is not life insurance."

Following a consideration of the record, we concur in the findings and decree of the trial court.

We hold that in this proceeding the appellant has failed to show that at the present time the appellee is not operating as a fraternal organization in accordance with the provisions of its articles of incorporation and bylaws.—Affirmed.

BLISS, C. J., and SMITH, MILLER, GARFIELD, and HALE, JJ., concur.

WENNERSTRUM, J., takes no part.