RUTH BASH, appellant, v. H. E. HADE dba HADE MOTOR COMPANY et al., defendants; H. E. HADE, appellee.

No. 48117.

(Reported in 55 N.W.2d 278)

October 14, 1952.

Rehearing Denied January 16, 1953.

Lambach, Kopf & Berger, A. Fred Berger and Daniel A. Whalen, all of Davenport, for appellant.

Johnson & Phelan, J. Francis Phelan and Joseph L. Phelan, all of Fort Madison, for appellee.

Wennerstrum, J.—The plaintiff, Ruth Bash, brought an action for damages against H. E. Hade dba Hade Motor Company and also against Kermit P. Hanaphy as the result of an automobile collision between a car in which she was a passenger and a car then operated by Hanaphy. Prior to the time of the trial the plaintiff dismissed her action against Hanaphy. The circumstances of the automobile collision by which the plaintiff claims she was injured are not herein involved. The trial court directed a verdict for the defendant, Hade, at the conclusion of the plaintiff's evidence. Subsequently a motion for new trial was presented by the plaintiff and the trial court dismissed and overruled it on grounds which will be hereinafter commented upon. The plaintiff has appealed.

The issues involved as presented in the trial court and now submitted to us pertain to (1) the nature of the allegations in the plaintiff's petition, the facts pleaded in defendant's answer, and the claimed necessity of a reply to the allegations set forth in defendant's answer; and (2) the question of the liability of the defendant, Hade, on account of his original ownership of the car driven by Kermit P. Hanaphy and the claim of Hade of ownership by Hanaphy by reason of a claimed oral agreement to purchase.

In plaintiff's original petition it was alleged that at all times material to the issues involved the said H. E. Hade dba Hade Motor Company was the owner of a 1942 Packard and that at the time of the accident Kermit P. Hanaphy was operating this automobile with the knowledge, consent and permission of the defendant, H. E. Hade, and without any objection on his part. In an amendment to his answer the defendant added as an additional paragraph to the one in the original answer wherein he denied ownership of the automobile a further statement wherein he alleged that he had sold the 1942 Packard referred to in plaintiff's petition to the defendant, Kermit P. Hanaphy, on May 12, 1949, and on the same day delivered the automobile to him; that the sale price was $1400 plus sales tax of $28, and that on said date said Hanaphy gave the defendant his check in the amount of $200 as a part payment therefor and agreed to pay the balance at the rate of $100 per month until the full price was paid; that subsequently further amounts were paid which totaled $355 on the balance due on the purchase price and that from and after May 12, 1949, the defendant, Hade, had neither exercised any control nor domination over the custody, possession and operation of the Packard car and that from and after the claimed date of the purchase the defendant had no right to give nor withhold his consent to the operation of said automobile. No reply was filed by the plaintiff to the defendant's original answer or amended answer.

Kermit P. Hanaphy as a witness for the plaintiff testified in part as follows:

"I told Hade I would take the car, but I didn't have enough for a down payment. He told me to give him a check for $200.00 and I could soon drive the car. I told him the check at that time would be no good and he said it would never reach the bank. Then we came to a conclusion that if I pay Mr. Hade $100.00 a month I would have his permission to use the car until the time the collateral increased enough for a down payment and to be financed and the car registered in my name. That was the car I was driving. That was the car involved in this accident."

On the cross-examination of Hanaphy he testified in part as follows:

"In other words, that right to control that car began at the time Harvie turned it over to me, I was held responsible for the car, I presume. Its operation, keep, storage, repairs, all of that. I assumed those responsibilities. That right to take possession of the operation, garage, repair, wash and clean, drive and control that car was given to me because of this deal with Hade. And for Hade turning over this car to me, I gave him a check in the amount of $200.00 on the Lee County Bank and he agreed to hold that check because there was no money in the bank. I told him the check was no good. He said he would hold it and it would never reach the bank. And that was my understanding. Between that time when I took possession of this car and this accident I made various payments to Hade in accordance with that agreement. * * * Q. As far as you were concerned, it was your intention that the ownership of the car would be in you? A. No. Q. You didn't make that statement. A. The car didn't belong to me. Q. Did you make the statement that that was your intention that the car should belong to you? A. At a later date with enough collateral paid in to have it financed. Q. You did not have the registration certificate transferred into your name because you thought it was all right to drive it. Did you make that statement? A. Mr. Hade said it was all right. I made the statement that I was to use the car. Q. Did you make the statement at that time and place and before those people that you did not have the registration certificate transferred because you thought it was all right to drive it that way? A. Yes. Q. Did you make the further statement that as far as you were concerned at the time you took that car it was your intention by the purchase agreement that the ownership of that car should be in you? A. Not at that time. Q. Did you make that statement? A. Not that I recall. I was pretty much in pain and with injuries. Q. Just say whether or not you made those statements. Did you further make the statement that you had all of the records of this transaction in your room? A. I did. * * * This deal with Hade to buy the automobile was entirely by word of mouth between me and Hade—a verbal understanding between us. In carrying out that understanding for the purchase of that car I did give him that check."

I. Rule 102, R. C. P., provides, "Every fact pleaded and

not denied in a subsequent pleading, as permitted by these rules, shall be deemed admitted, except allegations of value or amount of damage. Allegations of a reply shall be deemed denied by operation of law."

It has been definitely shown that the plaintiff in her petition pleaded ownership of the automobile by the defendant, Hade. It is our conclusion that the statements set forth in the answer merely controverted the allegations in the plaintiff's petition. For the defendant to allege that he did not own the car and to state that Hanaphy owned the car is merely a negative pleading. Consequently we see no necessity of a reply denying the allegations made in the defendant's answer which went only to the question of ownership which had been alleged in plaintiff's petition.

In the case of Shalla v. Shalla, 237 Iowa 752, 763, 764, 23 N.W.2d 814, 820, we held that rule 102 and rule 73 and other rules pertaining to a reply and pleading should be considered together. Rule 73 provides: "There shall be a reply to a counterclaim, and to new matter in an answer, responding thereto in the same manner that an answer responds to a petition, but not inconsistent with the petition." In the cited case it was pointed out that in a situation similar to the instant case a reply was not necessary. Similar holdings are found in Verlinden v. Godberson, 238 Iowa 161, 164, 25 N.W.2d 347; State ex rel. Kuble v. Capitol Benefit Assn., 237 Iowa 363, 365, 21 N.W.2d 890; Stacy & Thomas v. Stichton & Co., 9 Iowa 399, 401; Ford v. Wescott, 3 (Clarke) Iowa 286, 287.

II. Section 554.19, 1946 Code (section 18 Uniform Sales Act), is as follows:

"Property in specific goods passes when parties so intend.

"1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

Inasmuch as there is a conflict in the pleadings relative to the ownership of the automobile, we are concerned with whether

or not it was the intention of Hade and Hanaphy to have the ownership pass at the time of the completion of their negotiations.

In the case of Rudy-Patrick Seed Co. v. Roseman, 234 Iowa 597, 604, 13 N.W.2d 347, 350, we said: "Where there is a dispute as to the terms and the material circumstances of the agreement it becomes a question for the jury." See also Sempel v. Northern Hardwood Lumber Co., 142 Iowa 586, 590, 121 N.W. 23; Bishop v. Starrett, 201 Iowa 493, 495, 207 N.W. 561.

In Crescent Chevrolet Co. v. Lewis, 230 Iowa 1074, 1078, 300 N.W. 260, this court held that if the parties intended title to pass immediately such intention would govern.

As bearing upon the question of the intention of the parties we refer further to Moats v. Strange Bros. Hide Co., 185 Iowa 356, 367, 170 N.W. 456.

III. The defendant has referred us to several Code sections and cases pertaining to the question of ownership as affected by the Motor Vehicle Act. Section 321.1, subsection 36, "Owner", 1946 Code; section 321.51 (Liability of Former Owner), 1946 Code. Particular attention is called by the defendant to the case of Craddock v. Bickelhaupt, 227 Iowa 202, 210, 211, 288 N.W. 109, 113, 135 A. L. R. 474. However, in that case we observe this statement:

"In the instant case, any inference of ownership arising from the fact that the car was registered in the name of defendant at the time of the accident was met and overcome by other evidence introduced by plaintiff which established that prior to the accident defendant sold and delivered the Oldsmobile to the purchaser, Unruh, with the intention of passing the immediate, substantial ownership to the purchaser subject only to the reservation of title in defendant as security for the purchase money."

It was also stated in this last cited case: "The passing of ownership must be determined by the intention of the parties at the time of the transaction. The terms of the contract and all the parties did and said manifested an intention to transfer ownership to the purchaser, reserving the naked, legal title in defendant as security."

However, we do not find the same fact situation in the present case. In the cited case there was a written conditional contract, the giving of a note, and a mutual intention of passing immediate ownership. This was not the situation in the present case. The cited case is not applicable.

IV. Where ownership is the paramount issue the matter of the car registration in the defendant is a fact that can be considered by the jury. Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 572, 221 N.W. 514. The fact that there had not been a compliance as shown by the record with the Federal Reserve Bank Regulation "W", which pertains to the limitation of extension of credit, is another circumstance that could be considered by a jury. Another fact that could be considered by a jury is that at the time of the claimed sale the defendant then had a mortgage on the car in question. This information was not disclosed to Hanaphy as shown by the record. Even though there might appear to be contradictory statements in Hanaphy's testimony, that fact, if it is a fact, bears upon his credibility and is a matter for the consideration of a jury. 58 Am. Jur., Witnesses, section 862, page 491.

Under all the circumstances shown we hold that the trial court was in error in directing a verdict in favor of the defendant and that the fact question pertaining to ownership should have been submitted to a jury.—Reversed and remanded.

All Justices concur.