RUTH BASH, appellant, v. H. E. HADE dba HADE MOTOR COMPANY, appellee.

No. 48398.

(Reported in 62 N.W.2d 180)

January 12, 1954.

334

Lambach, Kopf & Berger, A. Fred Berger and Carl H. Lambach, all of Davenport, for appellant.

Johnson & Phelan, J. Francis Phelan and Robert M. Johnson, all of Fort Madison, for appellee.

THOMPSON, J.—This is the second appeal in this case. The first opinion appears in 244 Iowa 272, 55 N.W.2d 278, Bash v. Hade. Plaintiff's suit is for damages which she says she sustained in a collision between an automobile in which she was riding and a car driven by one Keran P. Hanaphy (also known in the record as K. P. Hanaphy), of which plaintiff alleges defendant was the owner. This ownership is denied by defendant, and it forms the major issue in the case. It was the chief point involved in the first appeal, and, except for some rulings on evidence which generally involved the question of ownership, is the only issue now. Upon each trial the district court directed a verdict for the defendant, Hade, holding his nonownership had been established as a matter of law.

I. Upon the first appeal we held there was a jury question as to Hade's ownership, and reversed and remanded the cause. Since the second trial has again resulted in a directed verdict upon the same ground, we must first examine the record to determine whether the evidence presented upon the question of ownership was materially different from that at the first trial; and if it was, whether the difference was sufficient to warrant the action taken by the trial court. The opinion in Bash v. Hade, supra, became the law of the case for all future proceedings. Lawson v. Fordyce, 237 Iowa 28, 32–40, 21 N.W.2d 69; Shannon v. Gaar, 234 Iowa 1360, 1362, 15 N.W.2d 257, 258; and, see Glenn v. Chambers, 244 Iowa 750, 755, 56 N.W.2d 892, 895.

On each trial it appeared the registration certificate of the automobile driven by Hanaphy at the time of the accident in question—November 6, 1949—was in defendant's name, although the car had been turned over to Hanaphy and had been in his possession and under his control since May 12 of the same year. Other evidence, substantially the same, was that Hanaphy had on May 12 given Hade a check for $200 which both parties knew was not good at the time, and which had not been cashed nor any at-

tempt made to cash it; Hanaphy had made cash payments to Hade totaling $350 between May 12, 1949, and September 18, 1949; at the time the car was turned over to Hanaphy there was a chattel mortgage on it in the sum of $1200 of which he was not apprised and which was released on April 12, 1950, some months after the collision; and Federal Reserve Bank Regulation "W", and the Supplement to Regulation "W", providing for and requiring a minimum down payment on sales of personalty, such as used automobiles, of thirty-three and one-third per cent were in force at the time of the transaction between Hanaphy and Hade. In addition there was the testimony of Hanaphy on each trial, set out at some length in 244 Iowa at pages 274, 275, 55 N.W.2d 279, 280, which was not materially different on the second hearing, and which is in effect that he was to be permitted to use the car without becoming the owner until he had made enough payments to amount to one third of the purchase price of $1400, when the automobile would be financed through a finance company and the transaction closed.

It was upon this evidence we said, on the first appeal, there had been a jury question in the lower court and that tribunal was in error in directing a verdict for the defendant upon the issue of lack of ownership. Upon the second trial, while the order of proof was somewhat different, the evidence was the same, with two additional items which the court apparently thought changed the proof and strengthened it sufficiently in defendant's favor so another peremptory verdict was required. An incomplete instrument which, if filled out, would have been a conditional sales contract, was introduced by the defendant and the defendant offered his own testimony, which was not a part of the record on the first trial. It is in one or both of these items support must be found, if at all, for the trial court's ruling.

Defendant's Exhibit 2 is the purported conditional sales contract, and Exhibit 2A is the blank provided for acknowledgments, apparently on the back of the instrument, Exhibit 2. But all the blanks in Exhibit 2A are just that—that is, blank. No names are filled in for the state or county, or for the purchaser, dealer, or agent acknowledging, and there is of course no notary's jurat.

On Exhibit 2, the contract form, the description of the automobile by make, type of body, serial and motor numbers, model and year, and license number is complete. The amount of the purchase price is blank in the contract itself. The name of the seller, Harv Hade, and his address are in writing. The contract is signed by K. P. Hanaphy. Standing alone, then, the contract describes the automobile, states no purchase price or terms of payment, is apparently signed by the seller and purchaser, and contains the usual fine print conditions common to this type of agreement. It is not dated. Attached to the contract proper by a perforated line is a note, which contains the figures $1200 in the upper left-hand corner, a date "April 12, 49" and "Ft. Madison, Ia." in the upper left hand, and the following:

"For value received, I or we, as principals, jointly and severally promise to pay to the order of Harv Hade at the office of the O'Dea Finance Company in Des Moines, Iowa, Twelve Hundred & 00/100 Dollars, as follows, to-wit: $...............on ......................
194........., and $........................ each and every ...................... day of each .................... week .................... month .................... $........................ on or before .................... 19......... $........................ on or before ......................
19....."

Four other spaces beginning likewise with "on or before" and continuing with blank dates as last above set out follow. Then comes in fine print: "thereafter until the whole amount of said note is paid, with interest at 7% per annum on any past due amount, payable semiannually." Further fine print containing an acceleration clause, a provision for attorney fees, waiver of presentment for payment, protest and notice and justice of the peace jurisdiction to $300 follows.

It will be observed that neither the conditional sales agreement nor the note is a complete contract, nor do both of them together make a valid enforceable obligation. The contract lacks any statement of the price; the note is totally lacking in a maturity date for the principal sum or any of the installments which seem to be contemplated. In fact, the amount of the installments is not set out. It might be argued the principal sum of $1200 was to be paid at one time, except there is no date of maturity for it.

Both Hanaphy and Hade agree, in fact, there was never any

thought of enforcing either the contract or note contained in Exhibit 2. Hanaphy says when he had paid in a sum amounting to one third of the agreed price of $1400 a new contract was to be signed and the balance financed through a financing company. Hade himself says: "When he had paid a third down of that $1400 he was to draw a new contract and this contract was to be destroyed and we would sell that paper to a finance company." It is apparent the instruments contained in Exhibit 2 were neither separately nor jointly enforceable. Perhaps they have some weight as bearing on the real intention of the parties, and so are admissible in evidence, but incomplete and indefinite as they are we cannot say they are conclusive.

Nor does the testimony of the defendant, Hade, aid his cause materially. True, he says, "I did sell it to him." This came at the end of a rather long answer to a general question—"Tell us what transpired"—and plaintiff's counsel promptly moved to strike it, as opinion and conclusion, but the motion was denied. We find no prejudicial error in this ruling. The trial court has a considerable discretion in admitting or excluding testimony of this sort and we cannot say its discretion was abused in this instance. State v. Mabrey, 245 Iowa 428, 432, 60 N.W.2d 889, 891.

Hade's other testimony is factually not greatly different from Hanaphy's version. He agrees the $200 check was not to be presented for payment until Hanaphy told him to do so, and that time had never come; the so-called contract signed on May 12, 1949 (the date "April" 12 being a clerical error), was never offered to a finance company and a new one was to be executed when Hanaphy had paid one third of the total purchase price; there was no specific time when any particular part of the price was to be paid; and the car was mortgaged at the time of the sale to Hanaphy in the amount of $1200 to one Alec George, and this was not a floor plan mortgage.

Since our previous opinion in this case we have decided Sexton v. Lauman, 244 Iowa 570, 574–576, 57 N.W.2d 200, 202, 203. The question of the weight to be given to a certificate of registration as evidence of ownership was there discussed at some length. It was held such certificate makes a prima-facie case of ownership; subject, of course, to being disproved or rebutted.

We have such a situation in the instant case. The transfer of registration was never made. A period of almost six months elapsed from the time the car was given into the possession of Hanaphy until the accident in which plaintiff was injured. Yet neither Hanaphy nor Hade made any attempt to comply with the law which required a transfer of registration if there had been a bona fide change of ownership. We set out here sections 321.45 and 321.46, Code of 1950, which prescribe the duties of the seller and purchaser when ownership passes:

"321.45 Notice. Upon the transfer of ownership of any registered vehicle, the owner shall immediately give notice to the county treasurer, upon the form on the reverse side of the certificate of registration, stating the date of such transfer, the name and post-office address, with street number if in a city, of the person to whom transferred, the registration number, and such other information as the department may require.

"321.46 Duty of purchaser. The purchaser of the vehicle shall join in the notice of transfer to the county treasurer and shall at the same time make application for the transfer of the vehicle and for a new certificate of registration. No transfer shall be made on presentation of a delinquent registration certificate."

Certainly it is not unfair to either Hanaphy or Hade to permit the jury to draw the inference, if it sees fit, that they did not intend to violate the law when they did not comply with the above quoted sections, and so there was evidence of intent not to change the ownership until one third of the purchase price had been paid. The facts here are considerably like those in Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 221 N.W. 514, although in the latter case they were somewhat more favorable to the defendant than here. The purchaser in the Tigue case had apparently signed a "car order" plus a mortgage and notes on March 25, 1927. On March 27 next he was involved in the accident which caused the litigation. He testified he was to drive the car (leaving his own former one with the motor sales company, the defendant) and the deal was not to be completed until it was known whether the notes and mortgage would be accepted by the finance company. In the case now before us the note and mort-

gage were not filled out, and it was agreed they were never to be used.

There is also the matter of Regulation "W". The defendant would have us believe the arrangement between him and Hanaphy was made for the purpose of evasion of this enactment, which was in effect at the time and had the force of law. We cannot so lightly presume both parties were law violators. It is a circumstance which the jury had a right to consider in determining the intent of the parties when the automobile was delivered to Hanaphy on May 12, 1949.

■ It is true the inference of ownership arising from registration is rebuttable, and may be so entirely overcome no jury question remains. Craddock v. Bickelhaupt, 227 Iowa 202, 288 N.W. 109, 135 A. L. R. 474. The registration raises an inference of fact which may be conclusively disproved. But when it is supported by other evidence tending to show ownership in the holder of the certificate of registration and casting doubt upon his claim there was a transfer of such ownership from him to another, it cannot be said the inference is conclusively rebutted. A jury question remains. Such is the situation here.

■ II. Plaintiff assigns six errors, the sixth being based upon the direction of a verdict by the trial court. We have pointed out in Division I our agreement with plaintiff's contention at this point, and that a reversal is required. In view of a retrial other errors likely to arise should be noted and the trial court given a guide to follow. Assigned error No. 1 deals with the refusal of the court to strike the statement of the defendant "I did sell it to him", as an opinion and conclusion. We have indicated in Division I that this ruling was within the discretion of the court. Likewise, we have said Exhibits 2 and 2A were properly admitted. The refusal of the court to strike these and Exhibit 1, the $200 check, from the record, forms the basis for assignment of error No. 3. We think there was no error here. All were a part of the history of the dealings between the defendant and Hanaphy.

III. Assigned error No. 2 is predicated upon the limitation of cross-examination of defendant by plaintiff's counsel in respect to the law governing registration of automobiles and in regard to the chattel mortgage upon the car. The essential facts

with reference to these matters were adequately developed. There was no error.

IV. The fourth assignment is based upon the court's refusal to permit the witness Hanaphy to testify as to a conversation between Hade and himself in regard to insurance on the automobile. A previous question had elicited the statement from Hanaphy that he had a conversation with the defendant "about other people driving this particular vehicle." Then followed the question: "What was the nature of the conversation you had with him?" The answer was: "I asked him if he had full coverage—." At this point defendant's counsel interrupted with a motion to strike the answer on the grounds of immateriality, incompetency and irrelevancy, and "highly prejudicial and improper." The objection was sustained and the jury admonished to disregard the statement of the witness. The purported conditional sales contract, Exhibit 2, contains this language: "Purchaser shall keep property insured, protecting seller against fire, theft, and collision losses and against any other common hazards, as requested by seller in a form and in a company acceptable to seller, until balance is fully paid." The stricken answer set out above apparently was designed to show the situation of the insurance, and there is an implication at least that the defendant, rather than Hanaphy, had procured the insurance and had the policy in his possession. While there was no offer of proof and consequently the real situation which would have been disclosed is uncertain, in view of another trial we think it proper to say this line of examination should have been permitted. At another point the court indicated its thought the question of insurance might be shown for the sole purpose of evidencing the intent of the parties regarding ownership. But when an attempt was made to go into it, it was not permitted. If Hade carried the insurance made out only to himself, if no attempt was made to require Hanaphy to procure and pay for it as Exhibit 2 required, it would have a direct bearing on ownership. Because of the lack of offer of proof we would not reverse because of this ruling, but a reasonable inquiry into the matter of insurance, limited as the court properly suggested, should be permitted.

■ ■  V. The final assignment of error which we find it necessary to discuss concerns an attempt by plaintiff to introduce evidence of a conversation between Hanaphy and the defendant while Hanaphy was confined to a hospital following the accident in which plaintiff was injured. After some preliminary questions, Hanaphy was asked on examination as a witness for plaintiff:

"What did he [Mr. Hade] say with respect to the car?
"Mr. Phelan: Objected to—
"The Court: I believe we will sustain that objection. You are going to call for opinions and conclusions it looks like."

After some colloquy, plaintiff's counsel made an offer of proof, the substance of which was that if permitted the witness would testify when Hade visited Hanaphy in the hospital shortly after the accident Hade said it was his car and everything was taken care of, or would be taken care of. Hade said: "It is my car, and everything will be taken care of." To this offer objection was made that the proposed testimony was incompetent, irrelevant and immaterial because it transpired after the accident and after the execution and delivery of possession of the car under the conditional sales contract, and was an attempt to abrogate and change the terms of the written contract. At this point defendant's counsel received another assist from the court, who said: "The defendant could add to his objection that it calls for the opinion and conclusion of the witness and attempts to invade the province of the jury. That is the very thing that is in this case." Defendant's counsel, being quite evidently a man who could take a subtle hint when given, thereupon incorporated the court's ideas in his objection, and the court sustained it "on the grounds that it is a conclusion and invading the province of the jury, that being a matter that is directly in issue here."

Courts have a considerable latitude in excluding offered evidence that is objectionable, even in the absence of any objection or if there is a proper ground which is not stated. In re Will of Smith, 245 Iowa 38, 47, 60 N.W.2d 866, 871, and cases cited. But there must first be a good reason for the exclusion. This

element was lacking here. Neither the grounds first stated by counsel nor those suggested by the court were tenable. The evidence bore directly upon the question of ownership of the car. It was not an opinion or conclusion, but as evidenced by the offer of proof it was a statement of fact relating to admissions against interest made by the defendant. Nor was the other ground thought by the court to be sufficient to require exclusion valid. Even as to opinion evidence we no longer follow the rule that it may not be received on the very point in issue before the jury. Grismore v. Consolidated Products Co., 232 Iowa 328, 342–361, 5 N.W.2d 646.

In the case at bar the offered testimony was not opinion evidence, but a factual statement of an admission by the defendant. The offered evidence was admissible as against any objection, was important in the case, and its rejection was prejudicial error. It bore directly upon the understanding of the defendant as to ownership of the car, and if admitted would further strengthen plaintiff's claim that the intention of both parties was that Hade should remain the owner until Hanaphy had paid one third of the agreed price, and so was the owner at the time of the accident.—Reversed and remanded.

All JUSTICES concur.