Bill KANZMEIER, Appellee,

v.

Charles McCOPPIN, Appellant.

No. 85–913.

Supreme Court of Iowa.

Jan. 14, 1987.

John K. Petersen, and Philip C. Armknecht of Reese & Armknecht, Red Oak, for appellant.

Arthur A. Neu of Minnich & Neu, Carroll, for appellee.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER and NEUMAN, JJ.

SCHULTZ, Justice.

In this law action tried to the court plaintiff was awarded damages on his claim that defendant breached an oral contract to sell 360 head of cattle at $60 per hundred weight. The damages were determined by subtracting the contract price from plaintiff's purchase price of "cover" cattle pursuant to Iowa Code section 554.2712 (1983). The court of appeals reversed the trial court's holding that there was a contract between the parties. On further review we affirm the trial court's holding that a contract existed between the parties and we vacate the decision of the court of appeals. We disagree, however, with the trial court's determination of damages, and reverse and remand for a redetermination of damages.

On December 2, 1983, two livestock order buyers contacted defendant Charles McCoppin to determine whether McCoppin was interested in selling any of his cattle. The three men discussed the price of cattle sold at a local sale barn earlier that day. As a result of this discussion, defendant stated that he would be willing to sell 360 head of cattle for $60 per hundred weight.

That evening one of the order buyers called plaintiff Bill Kanzmeier, a cattle feeder with whom the buyer had dealt for several years. Kanzmeier had previously told the order buyer that he was interested in buying cattle of this type. After being advised of the price, Kanzmeier agreed to buy the cattle and to pay the order buyer a commission of $.50 per hundred weight. Kanzmeier suggested that the cattle be picked up by truck on December 8, when he would have room available for them. The order buyer then called defendant and accepted his offer, finalizing the delivery date on which the cattle were to be picked up by plaintiff.

The next day the defendant learned that some cattle had been sold at a sale barn on December 2 for $62 per hundred weight. He maintains that the order buyer advised him concerning the sale prices of cattle at that particular sale barn, but neglected to mention that some cattle brought $62 per hundred weight. On December 5 defendant called the order buyer and told him he was not quite ready to sell the cattle. On December 6 defendant told the order buyer he did not want to sell his cattle. Plaintiff went to defendant's farm on December 7 and learned that the cattle had been sold that morning to another party for $62 per hundred weight. Plaintiff subsequently filed a petition seeking damages for the breach of the oral contract entered into by defendant and the plaintiff's agent, the order buyer.

On appeal defendant challenged (1) the trial court's determination that a valid contract existed between the parties, and (2) the method utilized by the court in assessing damages. Plaintiff maintains that the appeal should be dismissed because of defendant's failure to file the notice of appeal within the time specified. If it is not dismissed, plaintiff further claims that the issues should be limited to the matter raised in the motion to reconsider. We shall consider the procedural matters first.

■ I. *Procedural issues.* We are again confronted by the problem of the correct labeling of a motion. After the trial court entered judgment for the plaintiff, defendant filed a motion to reconsider, a motion which has no authorization in our rules but often creeps into litigants' motions in practice. We strongly urge that lawyers discontinue the use of this label

and correctly title motions in order to avoid issues concerning the timeliness of appeals. *See Beck v. Fleener*, 376 N.W.2d 594, 596 (Iowa 1985) (motions to reconsider that are not in substance motions for a new trial or rule 179(b) motions will not extend time for appeal). As often happens, defendant filed his appeal well past the thirty-day time limit prescribed by Iowa Rule of Appellate Procedure 5(a), but now urges that we should deem his motion to reconsider to be a motion under Iowa Rule of Civil Procedure 179(b). The time for appeal, then, would not have begun to run until after the ruling by the trial court on that motion. Without further elaboration, we agree with the court of appeals that in substance defendant's motion to reconsider on this record is a proper rule 179(b) motion. Consequently, defendant's appeal was timely filed. *See Suckow v. Boone State Bank & Trust Co.*, 314 N.W.2d 421, 425 (Iowa 1982).

In his motion for further review, plaintiff carries his arguments concerning the motion to reconsider one step further. He maintains that the appeal should be restricted to the issue raised in defendant's motion to reconsider and that we should not consider other issues. Plaintiff relies upon our holding in *Sykes v. Iowa Power & Light Co.*, 263 N.W.2d 551 (Iowa 1978); however, we find *Sykes* distinguishable.

*Sykes* was a condemnation case involving two appealable judgments, and thus differs from the present case, which has only one final judgment. In *Sykes*, judgment was entered in plaintiff's favor on a condemnation award on November 5, and a motion for new trial was overruled on November 7. While the motion was pending, plaintiff applied for attorney fees, which were awarded, and judgment entered on November 26. *Id.* at 553. Plaintiff's motion to reconsider the attorney fees award was considered to be a rule 179(b) motion. This latter motion was overruled on January 6 and appeal was taken on January 9. *Id.* We held there were two appealable decisions: the November 7 denial of a new trial on the merits of the condemnation judgment, and the January 6 ruling concerning attorney fees. *Id.* at 554. We held the appeal of the November 7 ruling was not timely filed, and we confined our review to the second appealable judgment concerning the attorney fees. *Id.* This is unlike the present case, which contains several issues but only one appealable judgment.

■ On appeal we are not limited to the matters raised by the rule 179(b) motion. We recognize that without such a motion a party may not challenge the trial court's failure to resolve an issue, claim, defense or legal theory. *State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206 (Iowa 1984). In the present case the trial court did address the issues the appellant has raised on appeal concerning the validity of the alleged contract, the finding of agency and the method used in assessing damages. We conclude that the filing of a proper rule 179(b) motion serves to extend the time limit for taking an appeal and does not limit the issues raised on appeal, so long as the issues were addressed by the trial court.

II. *Contract issues.* To fully understand the present issues concerning the validity of the contract, it may be helpful to trace the contentions of the parties. In his petition claiming breach of contract, plaintiff alleged that the order buyer, as a duly authorized agent, entered into an oral agreement with defendant, whereby plaintiff and defendant agreed to the contract in question. Defendant generally denied plaintiff's allegations in his answer; however, the position taken in his trial brief was that no valid contract existed because there was no meeting of minds of all parties. Because the order buyer approached defendant as a broker, rather than agent of the plaintiff, defendant urges that plaintiff never was a party to the contract. The trial court did not accept this contention and made findings of fact that the "buyers were representing … the plaintiff" and "that there was in fact a contract between the plaintiff and defendant to sell 360 head of steers."

On appeal defendant attacks the trial court's finding of an agency relationship and an oral contract. He claims there was no meeting of minds of the parties and that the court wrongly found an enforceable contract for a third party beneficiary. He also raises claims of misrepresentation. In reversing the trial court, the court of appeals adopted defendant's contention that the trial court wrongly found an enforceable contract for a third party beneficiary. The trial court, however, did not mention the concept of the third party beneficiary, nor did either party advance this theory in its trial brief. The record indicates that the issue before the trial court was whether the order buyer acted as plaintiff's agent in the negotiations for the purchase of the steers. The issue now is whether there was sufficient evidence to sustain the trial court's finding of agency.

■ The burden of proving an agency relationship is upon the party asserting its existence. *Chariton Feed & Grain, Inc. v. Harder,* 369 N.W.2d 777, 789 (Iowa 1985).

An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act.

. . . .

An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which an intention to create an agency may be fairly implied. . . . The question of whether there was a principal-agent relationship ordinarily is one of fact.

(Citations omitted.) *Pay-N-Taket, Inc. v. Crooks,* 259 Iowa 719, 724, 145 N.W.2d 621, 624 (1966). As the case was tried at law, our review is limited to determining whether substantial evidence supports the trial court's finding that an agency relationship existed.

■ We believe that substantial evidence supports the trial court's finding. Testimony indicated that the plaintiff asked the order buyer to look for cattle for him. The order buyer called the plaintiff, who authorized him to purchase the cattle and set the terms of delivery. Although there was some dispute concerning this, evidence was introduced to show that the order buyer told the defendant who the purchaser of the cattle was. Plaintiff testified that he operated through the order buyer as an agent. The order buyer testified that he had authority from the plaintiff to bind the plaintiff on the purchase of the cattle and that he purchased the cattle under this understanding and was only to receive a commission from the plaintiff. He stated, "I am acting as an agent for the man that is getting the cattle." The trier of fact could determine from this evidence that the order buyer acted on behalf of the plaintiff and was subject to his control and consent with regard to the purchase of the steers in question.

■ There was little dispute that the defendant entered into a contract to sell the cattle. Once the trial court determined that the order buyer acted as plaintiff's agent, there was sufficient evidence to support the court's finding that a contract existed between defendant and plaintiff for the sale of the cattle.

■ Defendant also claimed at trial and still maintains that the order buyers were guilty of misrepresentation because they failed to disclose the highest price paid for cattle at a sale barn on the date in question. Assuming without deciding that there was a concealment of the top price paid for cattle at the sale barn, any such concealment was immaterial. There was substantial evidence to support the trial court's finding that the cattle which had brought the top price at the sale barn were not comparable cattle. A misrepresentation is not material unless it is likely to induce a reasonable person to assent to a contract, or there is some special reason, known to the party making the representation, that it is likely to induce the particular person to manifest his assent. Restatement (Second) of Contracts § 162 comment

(1979). It was reasonable for the trial court to conclude that a failure to point out this sale involving higher priced cattle would not have induced the defendant to enter into the contract. We further point out that defendant only claims a negligent misrepresentation by this omission; he did not plead and does not now claim fraud. To make a contract voidable, the misrepresentation must have been either fraudulent or material. Restatement (Second) of Contracts § 164 (1979).

III. *Damages.* On appeal defendant maintains that the trial court erred in the method used in calculating damages. In his trial brief plaintiff urged that the proper method to determine damages for the breach of contract was to ascertain plaintiff's loss of profits. He urged that he had presented evidence showing the length of time he intended to feed the cattle, their rate of gain, the cost of the feed, and the price he would have received at the end of 120 days, resulting in damages of $37,-717.20. As an alternate measure of damages he urged the court to award an amount based on the difference between the agreed sale price and the cost to plaintiff in covering his loss. The trial court adopted the "cover" method of determining damages. The court awarded damages based on the difference between the sale price agreed upon by the parties and the hundred weight price of 358 replacement cattle multiplied against the weight of the replacement cattle. This resulted in a judgment of $19,458.07. On appeal, defendant concedes that the trial court should not have allowed a recovery of consequential damages for loss of profits, but also maintains that the "cover" price method was inappropriate. Plaintiff purchased cattle on four occasions between December 21, 1983, and February 6, 1984, for various prices. These cattle weighed approximately 135 pounds less apiece than defendant's cattle. Defendant urges that the court erred in finding that 60 days was a reasonable time within which to replace the cattle with cattle of lesser weight, and that the court did not consider testimony that the cattle could have been replaced immediate-

ly at a price similar to the price of defendant's cattle. Although defendant relies primarily on the time period, we believe there is a more serious problem in determining whether these cattle were in fact a proper cover.

The Uniform Commercial Code (UCC) provides that the buyer has several options as to remedy when the seller repudiates or fails to make delivery. The buyer may "cover" and recover damages equal to the difference between the cost of cover and contract price, plus incidental and consequential damages. Iowa Code §§ 554.-2711(1), (2), .2712(2). Alternatively, the buyer may recover damages equal to the difference between the market price (at the time the buyer learned of the breach) and the contract price, plus incidental and consequential damages. Iowa Code § 554.-2713(1). *See also Bahnsen v. Rabe,* 276 N.W.2d 413, 415 (Iowa 1979) (on breach of oral contract to sell and deliver cattle, trial court correctly determined damages on the basis of minimum price increase estimated, less shipping costs, and on the minimum contract weight of the cattle). We will not discuss additional remedies not applicable here, such as specific performance or replevin.

Certain principles concerning "cover" are applicable here. The buyer may choose to cover by making "in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." Iowa Code § 554.2712(1). Furthermore, the goods must be a likekind substitute. *Martella v. Woods,* 715 F.2d 410, 413 (8th Cir.1983). Consequently, there is no cover if the buyer does not purchase like goods but rather purchases goods substantially different. 4 R. Anderson, *Uniform Commercial Code* § 2–712:9 (3d ed. 1983 & Supp. 1985). This is not to say that the goods must be identical with those contracted for, but the cover goods must be commercially usable as reasonable substitutes under the circumstances of the particular case. *See Thorstenson*

*v. Mobridge Iron Works Co.*, 208 N.W.2d 715, 717 (S.D.1973) (citing U.C.C. § 2–712). Whether an item was a cover in fact is for the trier of fact to decide. *Id.* at 716. We will not interfere with the trial court's finding of fact if it is supported by substantial evidence. Iowa R.App.P. 14(f)(1). In applying these principles, it is basic that the remedies are to be liberally administered to put the aggrieved party in as good a position as if the other party had fully performed. Iowa Code § 554.1106.

After reviewing the record we must agree with the defendant that there is not substantial evidence that the 358 cattle purchased were a reasonable substitute for the cattle promised under the contract. Thus, those purchases did not qualify as cover under section 554.2712. Plaintiff testified that he purchased about 2000 cattle a year. He was selling cattle and wished to replace them with "big steers" so that he could hit an early April market. Defendant's cattle were big steers that had been fed corn and would not require a feeding break-in period. They were local cattle, out of one group, and would not be prone to sickness. The 358 cattle purchased over a period of 60 days could not be ready for market until almost two months later than defendant's cattle because of their weight and time of purchase. Plaintiff's own testimony shows that the cattle were totally unlike those he purchased from the defendant when he stated:

Q. And you were attempting to find other cattle that were like the McCoppin cattle to replace them, is that correct?

A. That's correct.

Q. Now, when you go out and purchase cattle, is there any difference in say purchasing cattle of a certain nature as contrast to say purchasing so many bushels of corn or beans?

A. Yes.

Q. It is different?

A. Yes.

Q. Why is it more difficult to purchase the cattle than say to cover with with corn and beans?

A. Well, basic corn is corn you know, and most of it is number two, but in cattle there is different grades, there is choice and different conditions of the cattle, I mean as far as the flesh and there is just a, you know, quite a variance.

Q. All right. Are heavy cattle easier to pick up certain times of the year than other times of the year, or not?

A. Yes.

Q. Why is that?

A. Well, there is the calving I guess, they are more available like in September, October, bigger steers like that, but certain times of the year that's about the only time they are ready, available.

Q. Okay. You said that you attempted to cover for the loss of the three hundred and sixty head. Did you find anything that in your judgment were really comparable to the McCoppin cattle?

A. No.

Q. Did you—so when you say "nothing comparable" you couldn't find what, anything of that weight?

A. Right.

Q. That would enable you to market them in early April?

A. Right.

Q. So what did you do as the next best thing?

A. Bought some lighter steers.

The remaining evidence showed that these lighter cattle could not substitute for the purpose for which he had purchased defendant's cattle. There was no evidence that the price of lighter cattle was similar to heavier cattle at the time they were purchased. Consequently, the finder of fact would have no way of determining whether the higher price paid for the lighter cattle was the result of the differences in the weight or of the rise in the market. As we do not believe there was substantial

evidence in the record to substantiate the trial court's determination of cover, we hold that, as a matter of law, this was not a proper cover.

This matter must be remanded to the trial court to redetermine damages on the record made before it. The measure of damages must be the difference between the contract price and the market price at the time the plaintiff learned of the breach, plus incidental and consequential damages, as prescribed by section 554.2713. We note that both parties spent much of their energy at the trial court level presenting facts and arguing the merits of consequential damages, including loss of profits. We note also that the trial court in its discussion of the proper measure of damages indicated that loss of profits as a measure of damages would be too speculative. The trial court has not made a finding of fact in this regard; it merely made an observation in connection with ascertaining the better method of determining damages. The trial court must make a finding of fact on this issue in order to decide whether consequential damages should be awarded.

We have recognized that there is a distinction between proof of the fact that damages have been sustained and proof of the amount of damages. *DeWaay v. Muhr,* 160 N.W.2d 454, 460 (Iowa 1968). We stated:

> If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.

*Id.* On remand the trial court should make findings of fact on these questions.

If the trial court determines that there is proof that damages for loss of profits have been sustained, the court will further have to make findings of fact concerning the plaintiff's efforts to minimize damages. The defendant presented evidence that plaintiff did not properly cover his losses by buying similar cattle in December. To recover loss of profits plaintiff has the burden to show that he could not have covered. Iowa Code § 554.2715(2)(a). *See also Cargill, Inc. v. Fickbohm,* 252 N.W.2d 739, 742 (Iowa 1977).

In summary, we hold that the trial court correctly determined that plaintiff was entitled to damages from the defendant for breach of contract. Therefore, we vacate the decision of the court of appeals and affirm the trial court in this respect. We further hold that the trial court improperly ascertained damages. We reverse the trial court's determination of damages and remand for a determination anew of damages on the record already made.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.