Dennis Eugene DESY and Suzanne Desy, Husband and Wife, Appellees,

v.

Randy C. RHUE and Team Ford, Inc., A Corporation f/k/a Friendly Ford of Sioux City, Inc., Defendants,

and

Charles E. Rhue, a/k/a C.E. Rhue, Appellant.

No. 89–923.

Court of Appeals of Iowa.

Sept. 26, 1990.

Emmanuel S. Bikakis and Larry A. Storm, of Bikakis, Vohs, Storm & Arneson, Sioux City, for appellant.

Maurice B. Nieland, of Kindig, Beebe, Rawlings, Nieland, Probasco & Killinger, Sioux City, for appellees.

Heard by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

Plaintiffs-appellees Dennis and Suzanne Desy sued defendant-appellant Charles E. Rhue seeking damages for injuries caused by the negligent operation of a motor vehicle by defendant Randy Rhue. Appellees also sued Team Ford on the same theory. Both Randy Rhue and Team Ford settled with appellees, for $20,000 and $60,000, respectively. Appellees proceeded to trial against appellant, the primary issue being whether appellant was an owner of the vehicle involved in the accident that injured appellees. Appellant seeks relief from an adverse verdict and judgment thereon on the grounds that the evidence was insufficient as a matter of law to submit the question of ownership to the jury. As we discuss below, we agree with appellant that the trial court should have directed a verdict in his favor, and we must, therefore, reverse and remand with directions for the trial court to enter the directed verdict.

During the 1985 Independence Day holiday, defendant Randy Rhue sought to purchase a used Jeep Wagoneer from defendant Team Ford of Sioux City. Randy's father, appellant Charles E. Rhue, at that time provided a blank, endorsed title to Randy for a 1971 Monte Carlo, apparently to be used as he wished. During the course of negotiations with the dealership, Randy disclosed that he had had financial problems. The dealership responded that it would be willing to sell the Jeep to him on credit only if he could obtain a co-buyer.

Over the course of a few days, Randy became interested in the Jeep in question and requested his father's help. Appellant agreed to become the co-owner of the vehicle. On July 6, Randy signed a purchase agreement, termed an offer to purchase, prepared by the dealership. The dealership did not sign the agreement, apparently preferring to wait until it had obtained appellant's signature on the offer. Randy took possession of the Jeep and left the Monte Carlo in the dealership's possession. Driving the Jeep, Randy left to obtain his father's signature on the proposed purchase agreement.

Randy then lived the car buyer's nightmare. On his way home from the dealership, Randy struck motorcyclist Dennis Desy. Desy suffered physical injuries, and his wife claimed damages for loss of consortium.

At trial, Charles Rhue was the sole defendant. The negligence of Randy Rhue was conceded, and the primary factual issue at trial was whether Charles Rhue had an ownership interest in the Jeep at the time of the accident.

The jury returned a verdict awarding the Desys damages of slightly over $109,000 from Charles Rhue. Charles later filed a

motion for pro tanto credit, seeking a credit for the entire $80,000 which the Desys had received in settlement from the former defendants (Randy Rhue and the dealership). The Desys responded that Charles was entitled to a credit only for the $20,000 they had received from Randy. The district court agreed with the Desys' position and granted Charles a credit only for the $20,000 settlement from Randy, not for the $60,000 settlement from the dealership. The district court then entered a judgment against Charles for slightly over $89,000. Charles has appealed from the judgment against him.

Appellant challenges the sufficiency of the evidence to permit a jury to find that he had any ownership interest in the Jeep at the time of the accident. Charles contends the evidence permitted only two possible conclusions about ownership: (1) that no sale had occurred at the time of the accident and the dealer remained the owner, or (2) that if a sale could be deemed to have occurred, Randy was the sole purchaser and Charles was involved in the transaction only to help Randy obtain financing.

Appellant also contends the district court erred by excluding certain evidence concerning the temporary paper license which was on the Jeep at the time of the accident, and which indicated that an application for registration had been made. A state trooper who investigated the accident was prepared to testify that the temporary license identified Randy Rhue as the only prospective owner for whom a registration had been sought.

Appellant contends the district court should have submitted to the jury several special interrogatories. The special interrogatories would have required the jury to make specific findings concerning whether appellant had paid any consideration to the dealership for the Jeep, whether the dealership had in any sense delivered possession of the Jeep to appellant before the accident, and whether Randy was acting as an agent for appellant when he signed a proposed purchase agreement for the Jeep. Appellant also argues that the district court erred in several of its jury instruc-

tions concerning principles of contract law, agency law, and sales law relevant to the question whether Charles had any ownership interest in the Jeep.

Appellant contends the district court erred by admitting the Desys' evidence that a few months after the accident, Charles had purchased a Jeep Cherokee vehicle from the same dealership. Appellant admits that the second Jeep was for Randy's benefit, but he notes this was because the accident (and a subsequent insurance dispute) had caused the State to suspend Randy's privilege to own and register a vehicle. Appellant argues that because of this factual distinction between the two transactions, the second transaction does not tend to prove or render probable the existence of any fact regarding the first transaction.

Finally, appellant contends the district court erred by giving him credit for only $20,000 of the $80,000 which the Desys received in settlement from the former defendants. He argues that if the case is deemed to be a comparative fault case concerning the negligence of multiple defendants, the Desys' settlement with a party later found to be 100% at fault (Randy) should discharge Charles' liability under the proportionate credit rule of *Thomas v. Solberg*, 442 N.W.2d 73 (Iowa 1989). In the alternative, if the case is not deemed to involve comparative fault and the pro tanto credit rule applies, appellant argues he should receive credit for the $60,000 settlement paid by the dealership, as well as for the $20,000 settlement paid by Randy; he argues that any other result gives the Desys a double recovery.

Our scope of review is limited to correction of errors at law. Iowa R.App.P. 4. We are bound by the trial court's findings of fact if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We are not, however, bound by the trial court's determinations of law.

The parties agree that the central issue in this case is whether, at the time of the accident, appellant was an owner by bona fide sale or transfer of the vehicle in question. Appellant assigns as error that the

evidence is insufficient as a matter of law to establish that he was an owner and the failure of the trial court to grant a directed verdict. Because we find that the evidence presented failed to show that there was a bona fide sale or transfer to appellant, we hold that the trial court erred in failing to direct a verdict in favor of appellant.

Looking to chapter 321 of the Code, we find that section 321.1(36) defines the word "owner" to mean "a person who holds the legal title of a vehicle." In addition, section 321.493 provides, in full:

> In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.
>
> A person who has made a bona fide sale or transfer of the person's right, title, or interest in or to a motor vehicle and who has delivered possession of such motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of such motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. The provisions of subsection 2 of section 321.45 shall not apply in determining, for the purpose of fixing liability hereunder, whether such sale or transfer was made.

There is no question of consent here. Regardless of "ownership," Randy clearly had the right to be operating the Jeep. Therefore, we focus on the second unnumbered paragraph of section 321.493. Under that paragraph, if appellant was a "purchaser or transferee to whom possession was delivered," he was an owner of the vehicle and may be held liable for the negligence of its driver.

■ Prior to the enactment of the second paragraph of section 321.493, there was a rebuttable presumption of ownership arising from issuance of a certificate of registration. *Bash v. Hade,* 245 Iowa 332, 339, 62 N.W.2d 180, 184 (1954). In fact, evidence of issuance of a certificate of registration made a prima facie case of owner-

ship. *Id.* at 337, 62 N.W.2d at 183 (citing *Sexton v. Lauman,* 244 Iowa 570, 57 N.W.2d 200, 202–03 (1953)). That presumption, however, could "be so entirely overcome [that] no jury question remain[ed]." *Id.* at 339, 62 N.W.2d at 180 (citing *Craddock v. Bickelhaupt,* 227 Iowa 202, 288 N.W. 109 (1939)). The general assembly overturned this method of determining ownership and now requires us to determine whether there has been a bona fide sale or transfer and to discount the effect of the registration of the vehicle for purposes of establishing liability. Act approved April 28, 1955, 56 Iowa Acts 191, ch. 157, § 8 (codified at Iowa Code § 321.493 (1989) (second unnumbered paragraph)).

In *Hartman v. Norman,* 253 Iowa 694, 112 N.W.2d 374 (1961), the Iowa Supreme Court examined a question of whether there had been a bona fide sale. In that case, the defendant dealership sought to avoid liability for a vehicle which had been delivered to defendant Coy, who had negligently injured the plaintiff. Concerning the necessary evidence, the Supreme Court stated:

> The official record raises an inference of ownership but it is at best a rebuttable presumption. Where it is fully overcome by the evidence, the issue is for the court; if the evidence is conflicting, it is for the jury.

*Id.* at 704, 112 N.W.2d at 380 (citation omitted). The evidence in *Hartman* indicated that the parties to the sale had executed a signed, written agreement and that all that remained were installment payments on an open account and registering the title. Despite the fact that defendant Coy was judgment-proof, the Court found the agreement valid, held that there was a bona fide sale, and ordered entry of a directed verdict for the defendant dealership. *See id.*

■ In keeping with *Hartman,* and by the terms of sections 321.1(36) and 321.493, we believe that to "hold[ ] the legal title" and to have "a bona fide sale or transfer," a purchaser must, at minimum, possess enforceable rights against the purported seller. This, by definition, is the essence of

a contract, *see Matherly v. Hanson*, 359 N.W.2d 450, 454 (Iowa 1984) ("one of the essential features of a contract is an obligation or liability to do or not do something" (citing *Mullenger v. Clause*, 178 N.W.2d 420, 428 (Iowa 1970)); therefore, a contract should be a prerequisite to imposing liability upon appellant. To hold otherwise would be to create liability for a vehicle in which appellant would have no legal rights—to impose the sanction of law without granting the concomitant protection of law.[1]

■■■ Unlike the *Hartman* case, however, we hold that there was no conflicting evidence sufficient to warrant a jury determination of whether an enforceable contract was created, hence whether ownership was transferred to appellant. The essential elements of a contract include communication of an offer and acceptance in a manner specified or required by law. The purchase agreement purported to be an offer from the buyer to the seller and stated in bold capital letters that "THIS AGREEMENT IS NOT BINDING UNTIL ACCEPTED BY THE SELLING DEALER OR HIS AUTHORIZED REPRESENTATIVE." Appendix at 329. The question thus may be rephrased as whether, at the time of the accident, the purchase agreement was an enforceable offer by the appellant accepted by the dealership.

Appellees contend that we should find a bona fide sale because everything was agreed and completed but the signing, but in the same breath, they tell us that there is no issue as to the enforceability of the purchase agreement. Appellees further state that "Iowa law is clear that when the terms of an agreement are definitely fixed so that nothing remains except to reduce

them to writing, an oral contract will be upheld unless the parties intended not to be bound until the agreement was reduced to writing." Appellee's Brief at 9–10 (citing *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977)).

We will assume for the sake of argument that appellant had manifested enough intent to make an offer. Restatement (Second) of Contracts § 26 (1979), states a principle that we believe is well recognized in Iowa law:

> A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person does not intend to conclude a bargain until he has made a further manifestation of assent.

In this case, it could not be clearer than is expressed in the proposed purchase agreement and by the conduct of the parties to the proposed contract that the parties did not intend to, or believe that they would, be bound until appellant had signed and the dealer had accepted.[2]

■■■ Moreover, if there was an effective offer under this agreement which appellant had not even seen, much less signed, it is well within the power of the offeror to assign the time at which the offeree may accept the terms of the contract, *see* Restatement (Second) of Contracts § 60 (1979) ("If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract."); *see also Shell Oil Co. v. Kelinson*, 158 N.W.2d 724, 728 (Iowa 1968) (citing Restatement § 60), and of the parties to a contract to assign the risks associated with the contract. The statement in the purported agreement that

---

1. As we note below, we are not entirely convinced that an offer was extended, much less a contract. We would be loath to impose liability on one who merely proposes to enter into a contractual obligation, especially one who, for all practical purposes, does not yet know or has not adopted the contents of the purported offer.

2. Were we to find that there had been agreement and that title had passed under these facts, we would be imposing much too heavy a burden on anyone who proposes to be bound by a

contract. It is one thing for an agreement between two equally informed parties working together on preliminary matters to ripen into an enforceable contract, for which Appellees cite *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977); it is quite another to impose a contract when the supposed offeror has not seen the offer and both parties and the agreement itself indicate that there will be no binding contract until it is signed and finally accepted.

the parties would not be bound until acceptance clearly required the risks be assigned based on the status quo before contract negotiations until the agreement was, as it were, "signed, sealed, and delivered." Thus, because the purported agreement is clear as to the intent of the parties not to be bound, the jury should not have been asked to determine that issue.

We believe this finding comports with the spirit and the purpose of section 321.-493. That statute is designed to absolve certain parties from liability and to fix liability on other parties. It removes the problem of registration of the certificate of title, but it imposes a minimum threshold of a bona fide sale or transfer. Preliminary negotiations or mere willingness to enter into a bargain do not rise to that level. By this we neither restrict nor expand the persons upon whom liability should be placed, but attempt to bring into focus who among the possible parties should assume or remain responsible for the negligence of a driver.

■ Finally, we are unconvinced by appellee's assertion that there was an agency relationship between appellant and his son. We find the following guidance in our case law:

> The burden of proving an agency relationship is upon the party asserting its existence. . . .
>
> An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which an intention to create an agency may be fairly implied. . . . The Question of whether there was a principal-agent relationship ordinarily is one of fact.
>
> [A]s the case was tried at law, our review is limited to determining whether substantial evidence supports the trial court's finding that an agency relationship existed.

*Kanzmeier v. McCoppin,* 398 N.W.2d 826, 830 (Iowa 1987) (citations omitted). We find no such substantial evidence of record in this case. While it might be feasible to find an agency relationship in appropriate circumstances, the fact of the matter is that none of the parties to the purported agreement believed such an agency existed. Nor did they conduct themselves in such a manner that even an objective observer would believe that one existed. Because the dealership insisted upon appellant's signature before having the offer submitted for approval and acceptance, it clearly did not believe that Randy had any actual or apparent authority to consummate the deal and create binding rights between appellant and the dealership. It also is abundantly obvious that neither appellant nor his son Randy believed Randy had the powers of an agent.

We believe the evidence clearly shows that appellant was entitled to a directed verdict on the issue of ownership because appellee failed to prove that there was an enforceable contract between appellant and the dealership. Thus, the evidence failed to present a jury question on the issue of whether appellant was an owner of the vehicle. Because our holding is dispositive, there is no need to address the other issues presented. The judgment should be reversed and the cause remanded with directions for the trial court to enter a directed verdict for appellant.

REVERSED AND REMANDED.

HAYDEN, J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I would hold that sufficient evidence existed to support a finding the father had an ownership in the automobile. Furthermore, I agree with the trial court the father was not released. A release of one tortfeasor should not release the others when an express reservation is made.

Iowa Code section 668.7 provides that a release entered into by a claimant and a person liable discharges that person from all liability, but does not discharge any other persons liable upon the same claim unless it so provides. I would hold that this code section controls this situation.