Jane Ann WEBER, Appellee,

v.

Michael Joseph WARNKE, Defendant,

and

Arthur Winker and Cletus Winker,
d/b/a Glidden Body Shop,
Appellants.

No. 00–0638.

Supreme Court of Iowa.

Jan. 23, 2003.

Rehearing Denied March 14, 2003.

René Charles Lapierre of Klass, Stoik, Mugan, Villone, Phillips, Orzechowski, Clausen & Lapierre, L.L.P., Sioux City, for appellants.

Gregory T. Racette and Marci B.H. Tooman of Hopkins & Huebner P.C., Des Moines, for appellee.

LAVORATO, Chief Justice.

Jane Ann Weber sued Arthur Winker and Cletus Winker d/b/a Glidden Body Shop (collectively "Winkers") and Michael Warnke for injuries resulting from an automobile collision with a vehicle she claimed the Winkers owned. Weber filed a motion for adjudication of law points to determine whether the Winkers in fact owned the vehicle. The district court concluded the Winkers owned the vehicle because they failed to comply with Iowa Code section 321.52(4)($a$) (1997), pertaining to out-of-state salvage vehicles, when they allegedly sold the vehicle to Warnke, the driver involved in the collision. The Winkers appealed and we transferred the case to the court of appeals which affirmed. On further review, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case for further proceedings.

## I. Background Facts and Proceedings.

On February 3, 1998, Weber was driving a motor vehicle that was involved in a collision with a 1986 Mercury Sable driven by Warnke. The Winkers had purchased the Sable from State Farm Insurance Company (State Farm) at the Nebraska Salvage Pool on September 8, 1997.

The Winkers purchased the Sable intending to rebuild it or use it for parts. State Farm, as the seller, executed a Nebraska salvage certificate of title for the Sable, and Cletus Winker, on behalf of Glidden Body Shop, executed the document as buyer. The Winkers did not obtain an Iowa certificate of title, salvage or otherwise, before the collision. They believed that because they had a recycler's license, they could sell salvaged vehicles to individuals in Iowa with a Nebraska salvage certificate of title. However, they also understood the process necessary to

obtain an Iowa certificate of title for vehicles purchased out of state.

Warnke worked as an employee for the Winkers and later worked for them on a contract basis. He expressed an interest in buying the Sable from the Winkers after his own 1987 Ford Taurus was totaled in an accident. A purchase agreement for the Sable was signed, and the Nebraska salvage certificate of title was assigned to Warnke on January 12, 1998.

One or both of the Winkers told Warnke that he should not drive the Sable until he transferred title and had it inspected. Warnke was an experienced auto body repairman, familiar with the procedure necessary to transfer title when selling and buying automobiles. According to Warnke, every time he asked Arthur Winker for the title to the Sable, Arthur would just issue a new bill of sale for the vehicle. Eventually, Warnke put the license plates from his totaled Taurus on the Sable.

Weber sued Warnke, the Winkers, and State Farm, her insurer, seeking recovery of damages for her personal injuries resulting from the accident. Weber sought recovery from the Winkers on a theory of vicarious liability pursuant to Iowa Code section 321.493 (Supp.1997) and under an employer/employee and master/servant theory. Before trial, Weber dismissed with prejudice the employer/employee claim. Also before trial, Weber dismissed with prejudice her claims against State Farm.

The district court denied the Winkers' motion for summary judgment. In that motion, the Winkers claimed there had been a bona fide sale of the Sable to Warnke; therefore, pursuant to section 321.493, the Winkers were not liable for Weber's damages.

Later, Weber filed a motion to adjudicate law points, contending that any "sale" of the Sable to Warnke was ineffective because of the Winkers' failure to obtain an Iowa salvage certificate of title, as required by Iowa Code section 321.52(4)(*a*). Therefore, Weber contended, the Winkers owned the Sable on the date of the collision pursuant to section 321.493. The district court ruled as a matter of law that on the date of the collision the Winkers owned the Sable.

Without prejudice to an appeal of the district court's ruling on Weber's motion to adjudicate law points, the Winkers stipulated that Warnke was negligent, his negligence was the sole proximate cause of the accident, and Weber's damages equaled at least $300,000 (the amount of the Winkers' liability insurance). The matter then proceeded to a jury trial, which resulted in a verdict of $783,549.79 for Weber.

The Winkers appealed from the district court's ruling on Weber's motion to adjudicate law points. We transferred the case to the court of appeals, which affirmed the district court ruling. We granted the Winkers' application for further review.

## II. Issue.

The issue we must decide is whether acquiring an Iowa salvage certificate of title pursuant to Iowa Code section 321.52(4) and related administrative rules is a condition precedent to any bona fide sale for liability purposes under section 321.493(2).

## III. Scope of Review.

 We review a ruling on an adjudication of law points for errors at law. *Westfield Ins. Co. v. Economy Fire & Cas. Co.*, 623 N.W.2d 871, 876 (Iowa 2001). "An adjudication of law points is confined to a determination of *legal matters* on uncontroverted pleadings." *Mortensen v. Heritage Mut. Ins. Co.*, 590 N.W.2d 35, 38 (Iowa 1999) (emphasis added); *see* Iowa R.

Civ. P. 1.454 (formerly rule 116) (repealed effective August 1, 2002).

## IV. Applicable Statutes.

Our resolution of the issue depends on our construction of the following three statutes. Iowa Code section 321.493 provides in relevant part:

1. *a.* [I]n all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage. For purposes of this subsection, *"owner"* means the person to whom the certificate of title for the vehicle has been issued or assigned ....

2. A person who has made a bona fide sale or transfer of the person's right, title, or interest in or to a motor vehicle and who has delivered possession of the motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of the motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. The provisions of subsection 2 of section 321.45 shall not apply in determining, for the purpose of fixing liability under this subsection, whether such sale or transfer was made.

Iowa Code § 321.493 (Supp.1997).

Iowa Code section 321.45 provides in relevant part:

. . . .

2. No person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to the person for such vehicle ...; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title ... for such vehicle for a valuable consideration except in the case of:

. . . .

*c.* A dispute between a buyer and the selling dealer who has failed to deliver or procure the certificate of title as promised, or

*d.* Except for the purposes of section 321.493.

Except in the above enumerated cases, no court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title ... duly issued or assigned in accordance with the provisions of this chapter.

Iowa Code § 321.45(2) (1997).

Iowa Code section 321.52(4)(*a*) (out-of-state sales—junked, dismantled, wrecked, or salvaged vehicles) provides in relevant part:

A vehicle rebuilder or a person engaged in the business of buying, selling, or exchanging vehicles of a type required to be registered in this state, upon acquisition of a wrecked or salvage vehicle, shall surrender the certificate of title or manufacturer's or importer's statement of origin properly assigned, together with an application for a salvage certificate of title to the county treasurer of the county of residence of the purchaser or transferee within fifteen days after the date of assignment of the certificate of title for the wrecked or salvage motor vehicle. This subsection applies only to vehicles with a fair market value of five hundred dollars or more, based on the value before the vehicle became wrecked or salvage. Upon payment of a fee of two dollars,

the county treasurer shall issue a salvage certificate of title which shall bear the word "SALVAGE" stamped or printed on the face of the title in a manner prescribed by the department. A salvage certificate of title may be assigned to ... a person engaged in the business of purchasing bodies, parts of bodies, frames or component parts of vehicles for sale as scrap metal, a salvage pool, or an authorized vehicle recycler licensed under chapter 321H. An authorized vehicle recycler licensed under chapter 321H ... may assign a salvage certificate of title to any person.

Iowa Code § 321.52(4)(*a*).

### V. Analysis.

The district court reasoned that to qualify as a bona fide sale for the purposes of section 321.493, a purchaser must possess an enforceable right against the seller. The court concluded that because the Winkers did not have an Iowa certificate of title, as required by section 321.52(4)(*a*), they could not transfer their right, title, claim, or interest in the vehicle to Warnke. The transfer attempt by the assignment of the Nebraska salvage certificate of title to Warnke was ineffective; therefore, no bona fide sale or transfer occurred, and the Winkers as "owners" were vicariously liable under section 321.493.

The court of appeals agreed with the district court, concluding that "the transfer of a salvage vehicle differs from the sale or transfer of a vehicle with a regular title in that acquiring an Iowa salvage certificate of title pursuant to section 321.52(4)(*a*) and related administrative rules is a condition precedent to any bona fide sale or transfer of a salvage vehicle for the purposes of section 321.493(2)."

In their further review application, the Winkers argue that the court of appeals applied "title principles" instead of "owner-ship principles" to determine vicarious liability under section 321.493. The Winkers contend that this court has never recognized an exception to ownership principles for purposes of section 321.493 where a salvage certificate of title is involved. Rather, the Winkers argue, the court has "consistently maintained" that indices of ownership govern owner's consent cases.

■ The purpose of the section 321.493 exception is "to avoid the imposition of liability upon the prior owner merely for failing to effect a transfer of the title certificate to the new owner." *Peterson v. Ford Motor Credit Co.,* 448 N.W.2d 316, 320 (Iowa 1989); *see also Campbell v. LeClaire Wrecking Serv.,* 380 F.Supp. 555, 558 (S.D.Iowa 1974) (Iowa Code section 321.493 "places the onus of civil liability on all consenting owners *except those who, but for a defective or incomplete transfer of title,* would have no ownership interest at all." (Emphasis added.)). The exception also protects "an innocent third party from the careless operation of a motor vehicle" and makes "the owner responsible for the negligence of one to whom the owner entrusted its operation. Such laws are meant to protect injured persons against the financial irresponsibility of drivers." *Peterson,* 448 N.W.2d at 320 (citation omitted).

■ The section 321.493 exception "*removes the problem of registration of the certificate of title,* but it imposes a minimum threshold of a bona fide sale or transfer." *Desy v. Rhue,* 462 N.W.2d 742, 747 (Iowa Ct.App.1990) (emphasis added). Section 321.493 requires the court "to determine whether there has been a bona fide sale or transfer and *to discount the effect of the registration of the vehicle* for purposes of establishing liability." *Id.* at 745 (emphasis added).

■ To "hold the legal title" and to have "a bona fide sale or transfer," a purchaser must, at minimum, possess enforceable rights against the purported seller. *Id.* Therefore, a contract is a prerequisite to imposing liability on the purchaser. *Id.* at 745–46.

Weber cites two cases to support her argument that because section 321.493 exempts only section 321.45(2), the provisions of section 321.52(4)(*a*) must be met for a bona fide sale or transfer to occur. In *Campbell,* the court concluded a bona fide sale or transfer could not be made unless the transferor complied with the motor vehicle inspection provisions of section 321.238. 380 F.Supp. at 558–59. (Section 321.238 has since been repealed. *See* 1984 Iowa Acts ch. 1305, § 73.) The court reasoned as follows:

> The purpose of the inspection law is to ensure that vehicles operating on the streets and highways of Iowa meet at least some minimal standard of safety and that operation of such vehicles poses no undue threat to the health and well-being of the people and property in the state. It thus seems reasonable and just to hold transferors of motor vehicles to a greater responsibility with regard to inspection of their vehicles than with regard to the proper execution and registration of title documents. While failure to transfer a title properly may make the orderly collection of vehicle taxes more difficult or complicate the financing of vehicle purchases, the operation of potentially unsafe automobiles poses a substantial threat to the lives of all within their reach.
>
> . . . .
>
> The sale of an uninspected and potentially unsafe vehicle is a transgression of a much greater magnitude [than the failure to execute the proper paperwork, as required by section 321.45]. This may be

the reason the legislature did not broaden the [section] 321.45 exemption from civil liability to cover the failure to comply with [section] 321.238.

*Campbell,* 380 F.Supp. at 558–59.

In *Campbell,* the court noted that the legislature's failure to amend section 321.493 to include an exception for those who fail to comply with section 321.238 "seems to be . . . [an] indicium of intent to hold liable those owners who fail to satisfy the vehicle inspection law's requirements." *Id.* at 558. The court held that the transferor's failure to have an automobile inspected prior to transferring it to a purported buyer barred the transferor from making a bona fide transfer or sale of that vehicle; therefore, the transferor remained the "owner" for purposes of section 321.493. *Id.* at 559.

This court cited with approval the above quote from *Campbell* and reached a similar conclusion in *Sullivan v. Skeie Pontiac, Inc.,* 270 N.W.2d 814, 817 (Iowa 1978). The court explained the different objectives of sections 321.45(2) and 321.238:

> For owner's liability purposes under [section] 321.493, the legislature expressly provided that the certificate of title law in [section] 321.45(2) should not control. But it did not so provide with respect to the inspection law in [section] 321.238. That section is, among other things, a safety measure. The trial court aptly stated, "There is a sound explanation for the legislature's action, namely, owner's liability responsibility is a solid motivator to obtain safety compliance before a new buyer takes a motor vehicle onto the highway."

*Id.* at 816. The court asked, "how can we say a sale and delivery are bona fide when they are in contravention of the express proscription of [section] 321.238(18) that a person 'shall not' sell or transfer a motor vehicle unless a valid inspection certificate

is attached?" *Id.* at 817. Thus, the court held that noncompliance with section 321.238 resulted in retained ownership responsibility under section 321.493 on the part of the transferor. *Id.* at 817.

There is a "little bit of something" for both sides in *Campbell* and *Sullivan.* The two cases support Weber's assertion that the statutory construction rule of *"expressio unis est exclusio alterious"* (expression of one thing is the exclusion of another) applies. The rule recognizes that legislative intent—the polestar of statutory construction—is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned. *Meinders v. Dunkerton Cmty. Sch. Dist.,* 645 N.W.2d 632, 637 (Iowa 2002). So, the argument goes, because the legislature failed to specifically exempt section 321.52 from section 321.493 (as it did with section 321.45), the provisions of section 321.52(4)(*a*) must be met for a bona fide transfer or sale to occur.

On the other hand, *Campbell* and *Sullivan* also relied heavily on the purpose underlying section 321.238 in reaching the conclusion that the provisions of section 321.238 must be met for a section 321.493 "bona fide sale or transfer" to occur. As mentioned, in both cases the respective courts concluded that section 321.238 was an important safety measure enacted to ensure a minimal standard of safety and protect the health and well-being of the people and property in the state. *See Campbell,* 380 F.Supp. at 558; *Sullivan,* 270 N.W.2d at 817. Additionally, in *Sullivan,* this court relied heavily on the fact that section 321.238(18) expressly prohibited the sale or transfer of a motor vehicle unless a valid certificate of inspection was attached. *See Sullivan,* 270 N.W.2d at 816–17.

The legislature enacted section 321.52(4) for purposes other than safety. For example, section 321.52(4)(*c*) provides that the salvage theft examination

shall be for the purposes of determining whether the vehicle or repair components have been stolen. *The examination is not a safety inspection* and a signed salvage theft examination certificate shall not be construed by any court of law to be a certification that the vehicle is safe to be operated.

Iowa Code § 321.45(4)(*c*) (emphasis added). Section 321.52 merely describes the steps required to obtain an Iowa salvage certificate of title. *See Mulder v. State,* 565 N.W.2d 348, 350 (Iowa 1997) (noting that, although "[t]here is no published case law construing section 321.52 . . . it seems apparent from the nature of prior amendments to the statute, that the legislature wanted to ensure that consumers were informed about any significant damage and/or prior salvage designations which a vehicle might have had"). Similarly, the administrative rules intended to implement section 321.52 merely describe in greater detail the steps required to obtain an Iowa salvage certificate of title. *See* Iowa Admin. Code ch. 761–405.

▆ For reasons that follow, we find more persuasive the Winkers' argument that the provisions of section 321.52(4)(*a*) are encompassed within the meaning and language of section 321.45(2). Looking at chapter 321 as a whole, we note that section 321.45 is the first section in a portion of chapter 321 entitled "transfers of title or interest." Section 321.45 lays out the general proposition that title must be transferred with a vehicle. *See* Iowa Code § 321.45. Section 321.52 appears later in the "transfers of title or interest" portion of chapter 321, and deals specifically with transfer of title for out-of-state salvage vehicles. One can argue that the legisla-

ture's decision to exempt the certificate-of-title requirements of section 321.45(2) from the determination of a "bona fide sale or transfer" for purposes of section 321.493 includes *any* certificate-of-title requirement, including those for salvage vehicles as specified in section 321.52. The language of section 321.45 supports this argument. *See* Iowa Code § 321.45(2) ("No person shall acquire any right, title, claim or interest in or to *any* vehicle subject to registration under this chapter ... except by virtue of a certificate of title ....") (emphasis added).

The plain language of sections 321.45(2) and 321.493(2) makes clear that possession of a certificate of title is not required to prove whether a bona fide sale or transfer occurred for purposes of fixing liability under section 321.493(2). Those sections do not differentiate between a salvage certificate of title and any other certificate of title. As mentioned, section 321.45(2) refers to "... *any* vehicle subject to registration under this chapter...." Iowa Code § 321.45(2) (emphasis added). Out-of-state salvage vehicles are "vehicle[s] subject to registration under this chapter," because such vehicles are subject to registration under chapter 321, as provided in section 321.52. Therefore, "certificate of title" in section 321.45(2) refers to *any* certificate of title, salvage or otherwise. The district court erred when it concluded that the Winkers were "owners" because they failed to comply with the salvage certificate of title provisions of section 321.52(4)(*a*).

In agreeing with the district court, the court of appeals relied heavily on the fact that the "transfer of a salvage vehicle differs from the sale or transfer of a vehicle with a regular title." By the plain language of sections 321.45(2) and 321.493, these differences are irrelevant for purposes of fixing liability under section

321.493. The court of appeals erred in concluding otherwise.

## VI. Disposition.

In sum, we conclude that Iowa Code section 321.45(2) requires that the right, title, claim or interest of any person in or to "*any* vehicle subject to registration" must be evidenced by a certificate of title. Iowa Code § 321.45(2) (emphasis added). By its terms, this includes salvage vehicles. Iowa Code section 321.493(2) exempts from consideration the provisions of section 321.45(2) in determining whether a bona fide sale or transfer occurred for purposes of fixing liability for damages resulting from the negligent operation of a motor vehicle. Therefore, the existence of a certificate of title—salvage or otherwise—is irrelevant in determining whether a bona fide sale or transfer occurred here under section 321.493(2). Compliance with Iowa Code section 321.52(4)(*a*) and related administrative rules is not a condition precedent to the determination of a bona fide sale or transfer under section 321.493(2), and the district court and the court of appeals erred in concluding otherwise.

For all these reasons, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED.**